## In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3799

RAYMOND POWELL,

*Petitioner-Appellant,*

v.

CECIL DAVIS,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:02cv0900 AS—**Allen Sharp**, *Judge.*

———————

ARGUED JANUARY 26, 2005—DECIDED JULY 19, 2005

———————

Before POSNER, MANION, and WOOD, *Circuit Judges.*

WOOD, Circuit Judge. Indiana prisoner Raymond Powell
is trying to mount a collateral attack under 28 U.S.C.
§ 2254 on his conviction for attempted murder. The under-
lying constitutional issue he would like to raise is a due
process challenge to the jury instructions that the trial
court gave. Before we can reach that question, however,
there is an antecedent procedural problem: whether
Powell's § 2254 petition was filed beyond the time period
permitted by federal law. See 28 U.S.C. § 2244(d). The dis-
trict court concluded that it was indeed time-barred, and
dismissed the petition on that ground. This court certified

for appeal both the timeliness question and the due process argument. We now affirm the dismissal of the § 2254 petition as untimely.

## I

Applying the required presumption that the state supreme court correctly recited the facts, see 28 U.S.C. § 2254(e)(1), we learn that the following events led to Powell's conviction. On February 14, 1996, a verbal altercation between Aaron Jones and James Wright outside an apartment complex escalated into gunfire. See *Powell v. State*, 714 N.E.2d 624, 626 (Ind. 1999). When the shooting stopped, Jones was injured and his friend, Marquise McVea, was dead. *Id.* Jones identified Wright, Powell, and a third man as the shooters. *Id.*

Powell was charged with both the murder of McVea and the attempted murder of Jones. At Powell's trial, Jones (testifying for the state) reported that the events unfolded quickly. According to Jones, after he exchanged words with Wright, Wright opened fire on him. McVea turned and ran across the street, and Jones saw Powell "shooting straight ahead" at McVea. Jones acknowledged that McVea had gone to his nearby truck and pocketed a handgun just before the melée started, but he insisted that McVea never drew the weapon. *Powell*, 714 N.E.2d at 626. Importantly, Jones denied that he himself was armed. *Id.*

Throughout the proceedings, the state relied on two alternative theories in support of the attempted murder charge: first, that Powell tried to shoot Jones himself, or second, that he was responsible as the accomplice of Wright, the actual shooter. At the close of the evidence, when the judge instructed the jury on the accomplice theory, he failed to state that a defendant cannot be found guilty of attempted murder based on the acts of another without proof that he himself formulated a specific intent to kill the victim.

Moreover, in returning its verdict, the jury was not required to reveal which of the state's two theories it had accepted. The verdict said only that Powell was guilty of the murder of Marquise McVea and the attempted murder of Aaron Jones. The court sentenced Powell to consecutive terms of 62 years for the murder of McVea and 35 years for the attempted murder of Jones.

While Powell's direct appeal to the state supreme court was pending, the state disclosed to the trial court that Jones had testified in a wholly unrelated trial that he *did* have a gun on his person on the day of the shooting but that he did not draw the weapon. *Powell*, 714 N.E.2d at 626. Based on this allegedly newly discovered evidence, Powell filed a motion whose legal nature was somewhat ambiguous. It was captioned as a "Post-Conviction Petition," but it was then identified in the first paragraph as a "Belated Motion to Correct Errors" arising from new evidence of Jones's "perjury." After allowing the motion to be filed and holding a hearing to consider it, the trial court denied Powell's request for a new trial. *Id.* Powell's appeal from this ruling was then consolidated with his direct appeal and presented directly to the Supreme Court of Indiana. *Id.* at 626; see IND. APP. R. 56(A). The state supreme court affirmed the trial court's judgment on July 20, 1999. *Powell*, 714 N.E.2d at 630.

A few months later, in a letter written in October 1999, Powell's counsel informed him of the state supreme court's decision and offered her view of the next steps available to Powell. Counsel first explained: "[I]f you wish to further pursue your case, you need to file for permission to file Successive Petition for Post-Conviction Relief. You file this with the Court of Appeals." The letter then went on to tell Powell of the one-year time limit for filing a petition for federal habeas corpus relief. Counsel added that filing a state petition would toll that one-year period.

Despite counsel's instruction to seek authorization to proceed from the state appellate court, on March 31, 2000, Powell filed a postconviction petition directly in the trial court, challenging among other issues the trial court's failure to address the element of specific intent to kill in the attempted murder instruction that set forth the theory of accomplice liability. In response to Powell's request for counsel, the postconviction court appointed a state public defender. After the state answered Powell's petition on April 18, 2000, the postconviction court set a schedule for discovery. Powell's attorney then requested an indefinite stay of the proceedings, explaining that his office required him to work on cases in order of their filing dates, and he had numerous clients with filing dates earlier than Powell. The postconviction court granted the motion.

Counsel then gave Powell the bad news that his case was "on hold until I can get to it which will be awhile since I have at least 23 unreviewed cases ahead of you." Powell concluded that he had to take the initiative, and so in October 2000, he filed a *pro se* motion seeking access to transcripts from his trial. After learning of Powell's motion, counsel asked whether Powell wished him to withdraw his appearance. Powell chose to continue with counsel. In the months that followed, with his petition still stayed, Powell wrote to counsel several times about his case. Counsel responded each time that he still had other cases to work on before he could review Powell's.

Counsel never got to Powell's case on his own. Instead, two years after granting the indefinite stay, the postconviction court requested status reports on the case from the parties. In response, the state moved to dismiss the case for lack of jurisdiction, asserting for the first time that the captioned "Post-Conviction Petition" that Powell had filed while his direct appeal was pending counted as a first postconviction petition. If that was correct, then under Indiana law, the pending case was an unauthorized successive

petition because Powell had never sought and received permission to file it from the state appellate court. See IND. P-C. R. 1 § 12; see *Smith v. Walls*, 276 F.3d 340, 344 (7th Cir. 2002); *Tinker v. Hanks*, 255 F.3d 444, 445-46 (7th Cir. 2001). Counsel for Powell conceded that the state was correct; accordingly, the postconviction court dismissed the case for lack of jurisdiction on June 28, 2002. By now almost three years had passed since the state supreme court affirmed Powell's convictions. Powell responded with a late request to the state appellate court for permission to file a successive postconviction petition raising the jury-instruction claim, but his application was denied on November 1, 2002, with the explanation that he "failed to establish a reasonable possibility that he is entitled to postconviction relief."

On December 4, 2002, Powell filed a *pro se* § 2254 petition. In that petition, he asserted that the document he filed during his pending direct appeal was (as the text indicated) a "Belated Motion to Correct Errors," which is permitted by IND. P-C. R. 2 § 2, and not a first postconviction petition (as the caption suggested). If it was the former, Powell argued, his March 2000 petition should not have been dismissed as a successive effort at postconviction relief. The district court appointed counsel. Powell's new lawyer conceded that Powell's federal petition was technically untimely because, as the state insisted, the March 2000 submission was indeed a second postconviction petition that had not been properly filed under state law and thus did not toll the one-year federal statute of limitations. See 28 U.S.C. § 2244(d)(2). Counsel argued nevertheless that Powell's circumstances warranted equitable tolling for several reasons: (1) trial counsel's "ambiguous" instructions that filing a postconviction petition would toll the federal one-year time period; (2) the state public defender's negligence in permitting the March 2000 petition to languish; and (3) the failure of both the state and the postconviction court to notice the apparent

jurisdictional problem with his March 2000 petition earlier. The district court concluded that equitable tolling did not apply and denied Powell's § 2254 petition as untimely.

## II

Powell's convictions became final on October 18, 1999, after he chose not to petition the Supreme Court for a writ of certiorari. See *Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002). From that point, Powell had one year to file a § 2254 petition, unless something occurred to toll that period. See 28 U.S.C. § 2244(d)(1)(A). The statute expressly recognizes several such circumstances, including as pertinent here the pendency of a properly filed state postconviction petition. See 28 U.S.C. § 2244(d)(2); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Gray v. Briley*, 305 F.3d 777, 778-79 (7th Cir. 2002). In addition, three other statutory exceptions may delay accrual of this statute of limitations. 28 U.S.C. § 2244(d)(1)(B), (C), (D), one of which bears on Powell's case. The one-year period starts running from "the date on which [an] impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." § 2244(d)(1)(B); see *Williams v. Sims*, 390 F.3d 958, 959-61 (7th Cir. 2004). Finally, even after the Supreme Court's recent decision in *Pace v. DiGuglielmo*, 125 S. Ct. 1807 (2005), there may still be room for equitable tolling of the limitations period in compelling circumstances. See *id.* at 1815. Because Powell waited until December 4, 2002, to file his § 2254 petition, only tolling provisions recognized in the statute or equitable tolling or estoppel can excuse his untimeliness.

We first look to how the Indiana court treated the March 2000 postconviction petition to decide whether Powell's March 2000 petition was "properly filed" under § 2244(d)(2) and thus tolled the normal one-year period. See

*Pace*, 125 S. Ct. at 1810, 1814. The state postconviction court characterized Powell's March 2000 petition as a second petition filed without permission from the state appellate court. This may not have been an inevitable conclusion, as a matter of Indiana law. See, *e.g.*, *Terrell v. State*, 745 N.E.2d 219 (Ind. 2001) (party wishing to raise issue of newly discovered evidence while case pending on appeal is obligated to file a Belated Motion to Correct Error in trial court to preserve issue on appeal); *Sceifers v. State*, 663 N.E.2d 1191, 1192-93 (Ind. App. Ct. 1996) (distinguishing Belated Motion to Correct Error as a motion used during a direct appeal as opposed to postconviction proceedings). Nonetheless, we have no authority to second-guess a ruling based on state law. See *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (holding that federal court obliged to accept state interpretation of law in response to claim that state court was incorrect). Because an unauthorized successive petition is not considered "properly filed" under Indiana law, the one-year limit was not extended under § 2244(d)(2). *Pace*, 125 S. Ct. at 1814.

Recognizing this obstacle, Powell turns to equitable remedies to excuse the untimeliness of his § 2254 petition. Notwithstanding the fact that the Supreme Court took a strict approach to equitable tolling in *Pace* and rejected its application there, Powell urges us to find that his case is different. He points first to his public defender's asserted "misconduct" in handling his March 2000 postconviction petition. Instead of seeking an indefinite stay based on his office's apparently rigid policies, counsel should have checked first to see whether the petition was properly filed; his failure to do so, in Powell's view, amounted not just to negligence but to misconduct. For a number of reasons, however, this argument does not help him. First, of course, whatever the rules in Indiana may be with respect to state-provided counsel at the postconviction stage, as a matter of federal law a person has no such right. See *Pennsylvania v.*

*Finley*, 481 U.S. 551, 555 (1987); *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998). Second, "attorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client" and thus is not a circumstance beyond a petitioner's control that might excuse an untimely petition. *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003); see *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001); *Rouse v. Lee*, 339 F.3d 238, 248-49 (4th Cir. 2003) (en banc). Even before *Pace*, this court had rejected applying equitable tolling to circumstances where counsel directly misled a client that he filed a timely petition. See *Modrowski*, 322 F.3d at 968. Counsel's failure to do any preliminary work on the case before securing permission from the court to stay the proceedings was, at most, either negligence or legal error; in neither case would it warrant equitable tolling.

In fact, counsel volunteered to withdraw from the case, in light of his crowded schedule, and Powell declined the offer. This choice, which was made competently as far as anything in this record reflects, forecloses the argument that a state-created impediment prevented him from filing a timely § 2254 petition and thus showing that he is entitled to tolling under that theory. See 28 U.S.C. § 2244(d)(1)(B); *Sims*, 390 F.3d at 962 (recognizing room for equitable tolling where an action by a state actor cannot be "shoehorned" into § 2244(d)(1)(B)). Powell identifies the two-year stay as the impediment that prevented him from filing a timely § 2254 petition and blames the state postconviction court for granting the stay to accommodate the public defender. But that argument fails at the threshold for lack of a *state*-created impediment: the public defender's case management priorities are not the type of administrative measures, like hiring and budgetary decisions, that would make the office a state actor under the administrative-action exception for public defenders identified in *Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981). *Cf. Miranda v. Clark County, Nev.*,

319 F.3d 465, 469 (9th Cir. 2003) (public defender policy requiring that new clients take polygraph test to determine guilt or innocence as means of allocating office resources fit exception for administrative action). Instead, the apparent first-in, first-out policy for handling cases, no matter how ill-conceived it may be, is akin to the traditional functions of a law firm in organizing caseload among its lawyers, and therefore is not state action. See *Polk*, 454 U.S. at 325. (We note, however, that the alleged lack of any triage-like over-ride on this policy, under which the most urgent or consequential issues would move to the front of the queue, is an invitation to disaster.) Without state action, there can be no state-created impediment by the public defender agency.

In any event, the indefinite stay did not *prevent* Powell from filing a timely federal petition. See *Lloyd v. Vannatta*, 296 F.3d 630, 633 (7th Cir. 2002) (impediment must "prevent" prisoner from filing petition). As the Supreme Court recognized in *Pace*, a prisoner seeking state postconviction relief in circumstances where the operation of the limitations period is unclear may file "a 'protective' petition in federal court and ask[ ] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." 125 S. Ct. at 1813. It was Powell's decision to proceed with counsel despite knowing that counsel had asked for an indefinite stay that led to the belated review of his state postconviction petition.

Powell's effort to rely on equitable estoppel fares no better. Powell contends that because the state waited two years before raising the issue that the case was an unauthorized successive petition, it should now be estopped from raising a statute-of-limitations defense. See *Gildon v. Bowen*, 384 F.3d 883, 886 (7th Cir. 2004) (expiration of statute of limitations is affirmative defense). Powell argues that he justifiably assumed that the state's answer included all relevant defenses to his petition and that he reasonably presumed while his petition was indefinitely stayed that the

postconviction court had jurisdiction to hear it. These assumptions, however, fall considerably short of what Powell would have to demonstrate to establish equitable estoppel against the state. For that, he would need to prove "affirmative misconduct" by the state, in addition to the traditional requirements of reasonable reliance to his detriment on the state's misrepresentation. See *United States v. Rand Motors*, 305 F.3d 770, 773 (7th Cir. 2003); *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002); *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000). There is no evidence of any such affirmative misconduct, and thus the equitable estoppel doctrine cannot save Powell's petition either.

### III

For these reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*