In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-2999

DARRYL SIMMS,

*Petitioner-Appellant*,

*v.*

GERARDO ACEVEDO,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 28—**Robert W. Gettleman**, *Judge.*

ARGUED APRIL 13, 2009—DECIDED FEBRUARY 19, 2010

Before CUDAHY, POSNER, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Before us is Darryl Simms's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Like so many habeas cases, this one turns not on principles of constitutional or criminal law, but on state procedural requirements. At issue are two petitions that Simms filed in Illinois state court. If either was properly filed when Simms contends it was, his federal petition for habeas corpus is timely and should

be addressed on the merits. But if not, Simms's federal petition is barred by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d)(1), unless his circumstances merit equitable tolling of the limitations period.

Simms was convicted in 1985 of murder, aggravated criminal sexual assault, robbery, home invasion, and residential burglary. After a bench trial, he was sentenced to death. On appeal, his conviction was affirmed, but his sentence was vacated and the case was remanded to the trial court. On remand, he was again sentenced to death, this time by a jury. He appealed again and the case was remanded again because of a bad jury instruction. On remand, he was again sentenced to death by a jury. He appealed, the death sentence was affirmed, and certiorari was denied.

In 1995, while his appeals were pending, Simms filed a pro se petition for post-conviction relief in Illinois circuit court. In May 1997, he amended his petition, this time with the help of counsel. In August 1998, the petition was dismissed. Simms appealed to the Illinois Supreme Court and the court remanded the case, in August 2000, to the circuit court with instructions to hold an evidentiary hearing on Simms's *Brady v. Maryland* claims. In January 2003, Illinois's then-governor, George Ryan, commuted Simms's death sentence (and those of all Illinois's capital offenders) to a term of life imprisonment without the possibility of parole. Simms withdrew his *Brady* claims on June 22, 2004, before the evidentiary hearing was held; Simms states that he withdrew his

petition because he did not want to jeopardize the commutation of his sentence. On July 7, 2004, the trial court entered an order acknowledging the withdrawal of Simms's claims in Illinois state court.

Apparently his fears regarding the commutation of his sentence were assuaged sometime around June 7, 2005, because at that point (although the exact date is not clear for reasons discussed below), Simms attempted to file a pro se petition for habeas relief in the Randolph County Circuit Court. Attached to the petition was an application to proceed in forma pauperis. Around three weeks later (once again, the time is indeterminate because the petition was never file stamped by the clerk), in a letter dated June 30, 2005, the Randolph County Circuit Court clerk returned Simms's petition because he had not submitted a filing fee or the necessary copy of his trust account balance to support his in forma pauperis application.

On July 1, 2005, the same day Simms received his rejected application, he resubmitted the pro se complaint for habeas relief. The court accepted the filing of the petition on this date. But, the trial court later dismissed the complaint on the merits; the dismissal was affirmed by the Illinois Appellate Court, *Simms v. Uchtman*, No. 5-05-0561 (Ill. App. Ct. June 5, 2006) (unpublished order), and the Illinois Supreme Court denied leave to appeal on November 29, 2006. Simms immediately filed a petition for rehearing but it was rejected by the clerk of the Illinois Supreme Court on December 29, 2006. By this point, Simms had already filed his federal habeas petition. He did so on December 7, 2006.

The federal petition was dismissed by the district court on a finding that it was untimely under the one-year statute of limitations established by AEDPA. 28 U.S.C. § 2244(d)(1). The court determined that Simms's one-year clock started on July 7, 2004, which was the day the Illinois trial court issued an order acknowledging that Simms had withdrawn his post-conviction claims.

The district court did not stop the clock until July 1, 2005, which the court found was the date Simms properly filed his complaint for state habeas relief. This was 358 days after the clock started—so at this point he had seven days left. The district court tolled the clock until November 29, 2006, which is when the Illinois Supreme Court denied Simms's petition for leave to appeal. The district court refused to toll Simms's limitations period for the petition for rehearing that Simms filed immediately after his petition for leave to appeal was denied by the Illinois Supreme Court.

Thus, on November 30, according to the district court, the clock started again and Simms filed his habeas appeal on December 7, 2006—eight days later. The district court therefore found that Simms had missed the deadline by one day. The court then considered whether the statute should be equitably tolled and found that it should not because Simms had not pursued his rights diligently. The court thus dismissed the petition as untimely and did not reach the merits. Simms appeals.

We review the decision to dismiss a habeas corpus petition as untimely *de novo*. *Moore v. Knight*, 368 F.3d 936, 938 (7th Cir. 2004). Simms claims that the AEDPA limita-

tions period should have been tolled during two periods—when his state habeas petition was sent to the Illinois circuit court clerk on June 7, 2005, and when his petition for rehearing was sent to the Illinois Supreme Court clerk on November 29, 2006. Both of these petitions, he argues, were properly filed; thus, under the terms of AEDPA, his federal petition is timely. *See* 28 U.S.C. § 2244(d)(2) (tolling the statute of limitations when "a properly filed application for State post-conviction or other collateral review . . . is pending"). In the alternative, Simms argues that the district court abused its discretion in not applying the doctrine of equitable tolling to his petition.

### I.  Was the June 7, 2005 Petition Properly Filed?

Simms contends that he mailed his state habeas petition on June 7, 2005, and it should be deemed filed on that date under Illinois's mailbox rule. *See People v. Saunders*, 633 N.E.2d 1340, 1341-42 (Ill. App. Ct. 1994). Simms argues that despite his failure to attach a copy of his trust fund ledger, the circuit court was required to accept his petition under Illinois law, and therefore it was properly filed. The rejection of the application, he argues, was in error.

Under Illinois law, the court clerk was required to "accept and file any complaint, appearance, or other paper presented by the applicant if accompanied by an application to sue or defend in forma pauperis, and those papers shall be considered filed on the date the application is presented." 735 Ill. Comp. Stat. 5/5-105(e). The "application" to sue is required to "be in writing and

supported by the affidavit of the applicant." *Id.* 5/5-105(c). The court clerk relied on Administrative Order 90-7 of the Circuit Court of Randolph County, which requires inmates seeking to proceed in forma pauperis to submit a copy of their trust fund ledger as part of their affidavit. Because Simms did not include the trust fund ledger, the clerk rejected the application.

The Supreme Court has held that failure to comply with certain state law requirements does indeed render a petition improperly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (holding that untimely state postconviction motions are not considered "properly filed" for purposes of AEDPA). *But see Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (holding that petitions for state relief that contain claims that are procedurally barred may still be properly filed). In *Pace*, the Supreme Court noted specifically that the formal requirements for most petitions are not entrusted to the clerk's discretion, but must be later determined by the judge. *Pace*, 544 U.S. at 415 & n.5. The petitioner's argument in that case was that *only* petitions rejected by the clerk could be declared improperly filed under AEDPA.

Simms's argument is somewhat the inverse of the losing one in *Pace*. The clerk, he says, was required to file his petition whether or not it met the required form and therefore the petition should be considered filed when submitted to the clerk. To the extent that Simms argues that the period between the time the clerk received the petition and rejected it as improperly filed should be tolled, we can reject that out of hand. In

*Pace*, the Supreme Court foreclosed such a contention. *See Pace*, 544 U.S. at 414 (rejecting the notion that the "proper filing" of a petition is determined based on its acceptance by a clerk).

Simms, then, must be contending that the clerk erred by misinterpreting state law, which he says commanded the clerk to accept the petition, and that the petition was therefore properly filed as mailed on June 7. Notably, Simms does not offer evidence that he complied with the local rule on in forma pauperis petitions, and that the clerk overlooked his compliance. Instead, he argues that the clerk was required to accept the petition despite the deficiency and cites to Illinois law for the uncontroversial proposition that a local rule cannot trump state law. *Vision Point of Sale, Inc. v. Haas*, 875 N.E.2d 1065, 1080 (Ill. 2007) (Circuit courts in Illinois are vested with the power "to adopt local rules governing civil and criminal cases so long as . . . they do not conflict with supreme court rules or statutes . . . .").

On behalf of the warden, Illinois argues that we must defer to the clerk's interpretation of the Illinois statute and its relationship with the circuit court's filing requirements. But the clerk's determination of whether or not the petition was improperly filed is immaterial; had the clerk accepted the petition, any infirmity of the type described in *Pace* would have rendered it improperly filed. In fact, the case Illinois relies on, *Artuz*, 531 U.S. at 8, makes clear that petitions are properly filed when their "delivery and acceptance are in compliance with the applicable laws and rules governing filings." Furthermore,

a filing that is "erroneously accepted by the clerk" is "not properly filed." *Id.* at 9. Therefore, the clerk's view of the petition is not dispositive. Illinois asks us to compare this case to *Powell v. Davis*, 415 F.3d 722, 726-27 (7th Cir. 2005), but *Powell* involved our deference to a state supreme court's determination of whether a petition was properly filed, not deference to the court's administrative personnel. A clerk is not the expositor of Illinois's rules, but the administrator of those rules.

Illinois also argues that there is no proof in the record that the petition was mailed on June 7, just proof that Simms signed and had the petition notarized on that date. This argument can also be disregarded. If we accept the district court's conclusion that the petition was only one day late, then any petition properly filed before July 1 would allow Simms to avoid the AEDPA time bar.

Additionally, Illinois claims that Simms was actually 28 days late in filing his federal petition because it was not mailed from the jail but from a different zip code. Since the petition was not sent from jail, it was not entitled to the mailbox rule established by Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts, which provides for filing via the institution's internal mailing system on or before the last day for filing. Since, Illinois argues, the petition was filed from outside the prison, it therefore must be considered filed on January 3, 2007 when it was received by the district court. *See United States v. Craig*, 368 F.3d 738, 740-41 (7th Cir. 2004).

Illinois did not raise this issue below and therefore it is forfeited. AEDPA's statute of limitations is not a juris-

dictional bar to the court's power, *see Day v. McDonough*, 547 U.S. 198, 205 (2006), although a district court could raise the issue *sua sponte* if it caught a calculation error. *Id.* at 210. Here, however, the argument relies on actual physical evidence (the postmarked letter) not in the record presented to the district court; we have no ability to gauge the argument's merits.

So there is but one question—whether Illinois law considered Simms's petition properly filed, even if the clerk didn't. We note that Simms's argument that the clerk was required to accept the petition is unavailing; an improperly filed petition does not toll the statute even if it is in the state court's hands—that is what *Pace* teaches us. And this is the real problem for Simms—even if the clerk did accept the petition on June 7, it was improperly filed for purposes of AEDPA if it did not comply with "the applicable laws and rules governing filings." *Artuz*, 531 U.S. at 8.

Despite Simms's protests, the Illinois statute on which Simms relies does not conflict with the Randolph County court's filing requirements. Simms argues that relevant Illinois law, 735 ILCS 5/5-105(e), would only require the clerk to hang onto the petition, file it, and "[a]t most . . . require the clerk to contact the inmate and seek the required information." Pet. Br. at 21. But, regardless of whether the statute commands the clerk in a situation like Simms's to file the petition and then ask for the required trust fund information, or whether the statute allows the clerk to return the petition without filing it and then file it when the proper trust fund information

is included, Simms's petition was not properly filed, for purposes of AEDPA, until it complied with "the applicable laws and rules governing filings." In either scenario, therefore, the petition was not properly filed until the trust fund information was included.

Furthermore, the statute that Simms relies on is easily harmonized with the Randolph County Circuit Court rules. The statute requires the clerk to "accept and file any complaint, appearance, or other paper presented by the applicant if accompanied by an application to sue or defend in forma pauperis, and those papers shall be considered filed on the date the application is presented." 735 ILCS 5/5-105(e). The statute requires that the application to sue "be in writing and supported by the affidavit of the applicant." *Id.* 5/5-105(c). The "contents of the affidavit shall be established by Supreme Court Rule." *Id.*

Randolph County Circuit Court requires that in all civil cases brought by poor persons (that is, indigents seeking to prosecute an action without paying filing fees), "the petition for leave to sue or defend as a poor person shall be accompanied by a copy of the inmate's trust fund ledger indicating all deposits and withdrawals made to the inmate's trust fund account for the six months immediately preceding the submission of the petition." Randolph County Cir. Ct. Admin. Order No. 90-7. Given that Illinois law specifically delegates the authority to establish "the contents" of the in forma pauperis affidavit to the state supreme court and that the state supreme court in turn delegates rule-making author-

ity to the circuit courts, and that Simms doesn't challenge that this rule was validly enacted (at least as a procedural matter), we find it well within the Randolph County Circuit Court's purview under Illinois law to require that all petitions include a copy of the trust fund ledger. Given that the local rule the clerk relied on to reject the petition did not conflict with state law and that the petition was indisputably deficient (in that it did not meet the in forma pauperis requirements), it was not properly filed until July 1, 2005. Accordingly, the AEDPA limitations period was not tolled between June 7 and that date.

## II. Was the Petition for Rehearing Properly Filed?

Simms also seeks to toll the AEDPA limitations period for the period during which his petition for rehearing was pending at the Illinois Supreme Court. Of course, his petition was never really pending; it was returned three weeks later by the clerk's office, which informed Simms that it was "unable to file" the petition. Remember that Simms needs only one day of tolling to save his case; if we toll the period for the three weeks the clerk had the petition, his federal habeas corpus claim is timely.

Remember also that we explained above that the clerk's acceptance of a petition is not sufficient to render the petition properly filed. To prevail, Simms must succeed where he failed regarding his initial Illinois habeas petition discussed above; he must show that the clerk of the Illinois Supreme Court erred when she returned his petition. Both parties assume that the clerk was

unable to file the petition because it was mislabeled a "petition for rehearing." (The clerk's actual letter to Simms is more ambiguous, but since neither party teased out an alternative ground for rejection of the petition from the letter, neither will we).

Simms argues that the clerk misinterpreted Illinois law which, Simms claims, allows for petitions for rehearing after the denial of a petition for leave to appeal. Simms argues that the denial of the petition for leave to appeal (PLA) is a judgment and as such, is a proper subject for a petition for rehearing. *See* Illinois Supreme Court Rule 367(a) ("A petition for rehearing may be filed within 21 days after the filing of the judgment . . . ."). The respondent disagrees.

In a case like Simms's where there is no appeal as of right to the Illinois Supreme Court, leave to appeal to that court is entrusted to the "sound judicial discretion" of the court. Illinois Supreme Court Rule 315(a). Because of this discretion, the Illinois Supreme Court has refused to invoke res judicata based on its previous denial of a PLA at an earlier stage in the proceeding. "For *res judicata* to apply, there must have been a final judgment on the merits of the case. Denials of petitions for leave to appeal are not decisions on the merits." *In re Leona W.*, 888 N.E.2d 72, 81 (Ill. 2008); *see also People v. Ortiz*, 752 N.E.2d 410, 424 (Ill. 2001) ("It is well settled that our denials of leave to appeal are not decisions on the merits of the case. They carry no connotation of approval or disapproval of the appellate court action, and signify only that four members of this court, for reasons satisfactory

to them, have not voted to grant leave." (quotation omitted)).

Illinois law is, therefore, clear that the denial of the PLA is not a final judgment. And, accordingly, a petition for rehearing is not a proper vehicle to challenge the denial of a PLA. The fact that, as Simms points out, we have mistakenly assumed, in dicta, that a petition for rehearing is the proper vehicle to challenge the denial of a PLA, *see Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006); *Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002), does not alter our responsibility to interpret the law of Illinois as the Illinois courts have.

As the clerk noted when it rejected Simms's petition for rehearing, a motion for reconsideration is available to a petitioner whose PLA was denied. *See, e.g., People v. Thivel*, 916 N.E.2d 545 (Ill. 2009). Simms filed no such petition here, and we have repeatedly held that in Illinois, the time period during which a petition for reconsideration can be filed after the denial of a petition for leave to appeal is not tolled for purposes of AEDPA. *See Jones*, 449 F.3d at 789; *Wilson*, 302 F.3d at 747-48. At least one Illinois court of appeals has also made the same error of nomenclature that we made in *Jones* and *Wilson*, *see Butts v. City of Peoria*, 504 N.E.2d 544, 545 (Ill. App. Ct. 1987), but Simms does not argue that Illinois courts ordinarily treat the two separate motions identically and that he was prejudiced by the clerk's decision to choose not to in his case. Instead, he rests his claim on the fact that the denial of a PLA is a judgment. As noted above, it is not, and the Illinois statute is clear—

rehearing is only available when there has been a judg-
ment. Therefore, a petition for rehearing was an
improper filing after the denial of Simms's leave to
appeal. Accordingly, AEDPA's limitations period was
not tolled by the filing.

### III. Should the Limitations Period have been Equitably Tolled?

"Equitable tolling is rarely granted." *Tucker v. Kingston*,
538 F.3d 732, 734 (7th Cir. 2008). "Equitable tolling is
granted sparingly only when extraordinary circum-
stances far beyond the litigant's control prevented timely
filing." *Wilson*, 302 F.3d at 749 (internal quotations and
alterations omitted); *see also Tucker*, 538 F.3d at 734 (noting
the paucity of cases where we found it warranted). We
review the decision to deny equitable tolling for an
abuse of discretion. *Tucker*, 538 F.3d at 735.

In deciding that the AEDPA limitations period should
be equitably tolled, the district court must determine
that the petitioner has pursued his rights diligently and
extraordinary circumstances beyond his control stood
in the way of the timely filing of his petition. *Pace*, 544
U.S. at 418. The district court found that Simms failed to
act diligently in pursuing his federal rights, because he
waited nearly a year from the withdrawal of his
previous state court petition to begin his final attempts
at state court review.

The district court's reasoning is sound. Simms's last
two cracks at habeas relief in Illinois were fraught with

difficulties—the misfiled in forma pauperis petition cost him three weeks and the misfiled petition for rehearing cost him another three. But, given that he waited almost a year to file the claim, his later errors were magnified by his initial delay. *See Pace*, 544 U.S. at 419 ("Had petitioner advanced his claims within a reasonable time of their availability, he would not now be facing any time problem. . . ."). Despite the fact that Simms missed the deadline by one day, there was no extraordinary reason requiring the grant of equitable tolling. *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (declining to apply equitable tolling when petitioner missed a deadline by one day due to the death of the attorney's father several weeks before the deadline).

## IV. Conclusion

Accordingly, we AFFIRM the decision of the district court.

CUDAHY, *Circuit Judge*, concurring.    I concur in the judgment.