Justice Alito,
concurring in part and concurring in the judgment.
This case raises two broad questions: first, whether the statute of limitations set out in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. § 2244(d), is subject to equitable tolling; and second, assuming an affirmative answer to the first question, whether petitioner in this particular case has alleged facts that are sufficient to satisfy the “extraordinary circumstances” prong of the equitable tolling test. I agree with the Court’s conclusion that equitable tolling is available under AEDPA. I also agree with much of the Court’s discussion concerning whether equitable tolling is available on the facts of this particular case. In particular, I agree that the Court of Appeals erred by essentially limiting the relevant inquiry to the question whether “gross negligence” of counsel may be an extraordinary circumstance warranting equitable tolling. As the Court makes clear, petitioner in this case has alleged *655 certain facts that go well beyond any form of attorney negligence, see ante, at 686-637, 652', and the Court of Appeals does not appear to have asked whether those particular facts provide an independent basis for tolling. Accordingly, I concur in the Court’s decision to reverse the judgment below and remand so that the lower courts may properly apply the correct legal standard.
Although I agree that the Court of Appeals applied the wrong standard, I think that the majority does not do enough to explain the right standard. It is of course true that equitable tolling requires “extraordinary circumstances,” but that conelusory formulation does not provide much guidance to lower courts charged with reviewing the many habeas petitions filed every year. I therefore write separately to set forth my understanding of the principles governing the availability of equitable tolling in cases involving attorney misconduct.
I
“Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.” Pace v. DiGuglielmo, 544 U. S. 408, 418 (2005). The dispute in this case concerns whether and when attorney misconduct amounts to an “extraordinary circumstance” that stands in a petitioner’s way and prevents the petitioner from filing a timely petition. I agree with the majority that it is not practical to attempt to provide an exhaustive compilation of the kinds of situations in which attorney misconduct may provide a basis for equitable tolling. In my view, however, it is useful to note that several broad principles may be distilled from this Court’s precedents.
First, our prior cases make it abundantly clear that attorney negligence is not an extraordinary circumstance warranting equitable tolling. In Lawrence v. Florida, 549 U. S. 327, 336 (2007), the Court expressly rejected the petitioner’s *656 contention that “his counsel’s mistake in miscalculating the limitations period entitlefd] him to equitable tolling.” “Attorney miscalculation,” the Court held, “is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel.” Id., at 336-337 (citing Coleman v. Thompson, 501 U. S. 722, 756-757 (1991); emphasis added).
The basic rationale for Lawrence’s holding is that the mistakes of counsel are constructively attributable to the client, at least in the postconviction context. The Lawrence Court’s reliance on Coleman is instructive. In Coleman, the Court addressed whether attorney error provided cause for a procedural default based on a late filing. See 501 U. S., at 752. Because “[t]here is no constitutional right to an attorney in state postconviction proceedings,” the Court explained, “a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.” Ibid. In such circumstances, the Court reasoned, there was “ ‘no inequity in requiring [the petitioner] to bear the risk of attorney error that results in a procedural default.’” Ibid, (quoting Murray v. Carrier, 477 U. S. 478, 488 (1986)); accord, Coleman, 501 U. S., at 753 (“ ‘[C]ause’ under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him”); ibid. (“Attorney ignorance or inadvertence is not ‘cause’ because the attorney is the petitioner’s agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must ‘bear the risk of attorney error’”); id., at 754 (what matters is whether “the error [of counsel] must be seen as an external factor, i. e., ‘imputed to the State’ ”); ibid. (“In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation”); id., at 757 (“Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman’s claims in state court cannot constitute cause to excuse the default *657 in federal habeas”). As Lawrence makes clear, the same analysis applies when a petitioner seeks equitable tolling based on attorney error in the postconviction context. See 549 U. S., at 336-337 (citing Coleman).
While Lawrence addressed an allegation of attorney miscalculation, its rationale fully applies to other forms of attorney negligence. Instead of miscalculating the filing deadline, for example, an attorney could compute the deadline correctly but forget to file the habeas petition on time, mail the petition to the wrong address, or fail to do the requisite research to determine the applicable deadline. In any case, however, counsel’s error would be constructively attributable to the client.
Second, the mere fact that a missed deadline involves “gross negligence” on the part of counsel does not by itself establish an extraordinary circumstance. As explained above, the principal rationale for disallowing equitable tolling based on ordinary attorney miscalculation is that the error of an attorney is constructively attributable to the client and thus is not a circumstance beyond the litigant’s control. See Lawrence, supra, at 336-337; Coleman, supra, at 752-754; see also Powell v. Davis, 415 F. 3d 722, 727 (CA7 2005); Johnson v. McBride, 381 F. 3d 587, 589-590 (CA7 2004); Harris v. Hutchinson, 209 F. 3d 325, 330 (CA4 2000). That rationale plainly applies regardless of whether the attorney error in question involves ordinary or gross negligence. See Coleman, 501 U. S., at 754 (“[I]t is not the gravity of the attorney’s error that matters, but that it constitutes a violation of petitioner’s right to counsel, so that the error must be seen as an external factor, i. e., ‘imputed to the State’”); id., at 752 (rejecting the contention that “[t]he late filing was . . . the result of attorney error of sufficient magnitude to excuse the default in federal habeas”).
Allowing equitable tolling in cases involving gross rather than ordinary attorney negligence would not only fail to *658 make sense in light of our prior eases; it would also be impractical in the extreme. Missing the statute of limitations will generally, if not always, amount to negligence, see Lawrence, 549 U. S., at 336, and it has been aptly said that gross negligence is ordinary negligence with a vituperative epithet added. Therefore, if gross negligence may be enough for equitable tolling, there will be a basis for arguing that tolling is appropriate in almost every counseled case involving a missed deadline. See ibid, (argument that attorney miscalculation is an extraordinary circumstance, if credited, “would essentially equitably toll limitations periods for every person whose attorney missed a deadline”). This would not just impose a severe burden on the district courts; it would also make the availability of tolling turn on the highly artificial distinction between gross and ordinary negligence. That line would be hard to administer, would needlessly consume scarce judicial resources, and would almost certainly yield inconsistent and often unsatisfying results. See Baldayaque v. United States, 338 F. 3d 145, 155 (CA2 2003) (Jacobs, J., concurring) (noting that the “distinction between ordinary and extraordinary attorney malpractice . . . is elusive, hard to apply, and counterintuitive”).
Finally, it is worth noting that a rule that distinguishes between ordinary and gross attorney negligence for purposes of the equitable tolling analysis would have demonstrably “inequitable” consequences. For example, it is hard to see why a habeas petitioner should be effectively penalized just because his counsel was negligent rather than grossly negligent, or why the State should be penalized just because petitioner’s counsel was grossly negligent rather than moderately negligent. Regardless of how one characterizes counsel’s deficient performance in such cases, the petitioner is not personally at fault for the untimely filing, attorney error is a but-for cause of the late filing, and the governmental interest in enforcing the statutory limitations period is the same.
*659 II
Although attorney negligence, however styled, does not provide a basis for equitable tolling, the AEDPA statute of limitations may be tolled if the missed deadline results from attorney miseonduct that is not constructively attributable to the petitioner. In this case, petitioner alleges facts that amount to such misconduct. See ante, at 652 (acknowledging that ordinary attorney negligence does not warrant equitable tolling, but observing that “the facts of this case present far more serious instances of attorney misconduct”). In particular, he alleges that his attorney essentially “ ‘abandoned’ ” him, as evidenced by counsel’s near-total failure to communicate with petitioner or to respond to petitioner’s many inquiries and requests over a period of several years. See ante, at 636-637. Petitioner also appears to allege that he made reasonable efforts to terminate counsel due to his inadequate representation and to proceed pro se, and that such efforts were successfully opposed by the State on the perverse ground that petitioner failed to act through appointed counsel. See ante, at 637; Brief for Petitioner 50-51 (stating that petitioner filed “two pro se motions in the Florida Supreme Court to remove Collins as counsel (one of which, if granted, would have allowed [petitioner] to proceed pro se)” (emphasis deleted)).
If true, petitioner’s allegations would suffice to establish extraordinary circumstances beyond his control. Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word. See Coleman, supra, at 754 (relying on “well-settled principles of agency law” to determine whether attorney error was attributable to client); Baldayaque, supra, at 154 (Jacobs, J., concurring) (“[W]hen an ‘agent acts in a manner completely adverse to the principal’s interest,’ the ‘principal is not charged with [the] agent’s misdeeds’ ”). That is particularly so if the litigant’s reasonable efforts to terminate the attor *660 ney’s representation have been thwarted by forces wholly beyond the petitioner’s control. The Court of Appeals apparently did not consider petitioner’s abandonment argument or assess whether the State improperly prevented petitioner from either obtaining new representation or assuming the responsibility of representing himself. Accordingly, I agree with the majority that the appropriate disposition is to reverse and remand so that the lower courts may apply the correct standard to the facts alleged here.