In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1641

ANDREW M. OBRIECHT,

*Petitioner-Appellant,*

*v.*

BRIAN FOSTER, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:07-cv-00409-bbc — **Barbara B. Crabb**, *Judge.*

ARGUED MAY 21, 2013 — DECIDED AUGUST 16, 2013

Before RIPPLE, WILLIAMS, and TINDER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Andrew Obriecht filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Wisconsin. In the petition, he challenged his 1999 convictions in Wisconsin state court. Mr. Obriecht conceded that his petition was untimely, but asked the district court to deem it timely under the doctrine of equitable tolling. The district court declined to do so and dismissed the petition as untimely, holding that Mr. Obriecht

had not demonstrated his entitlement to equitable tolling.[1] Because Mr. Obriecht cannot establish that an extraordinary circumstance prevented his timely filing and that he has pursued his rights diligently, we affirm the judgment of the district court.[2]

# I

# BACKGROUND

In 1999, a jury convicted Mr. Obriecht of one count of attempted second-degree sexual assault of a child, five counts of fourth-degree sexual assault and one count of disorderly conduct. He was sentenced to both imprisonment and probation. He was released on probation pending his appeal, but that probation was revoked when he violated its terms. Accordingly, in August 2001, he was sentenced to seven years' imprisonment for the probation revocation, to run consecutively with the seven years imposed earlier on account of his 1999 convictions.

Mr. Obriecht challenged his 1999 convictions on direct appeal. The Wisconsin Court of Appeals affirmed his convictions, and the Wisconsin Supreme Court denied further review. While this direct appeal was pending, Mr. Obriecht obtained from the Wisconsin Court of Appeals an extension of time to file a challenge to his probation revocation.

---

[1]  The district court's jurisdiction was based on 28 U.S.C. § 2254.

[2]  We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a).

On December 13, 2002, Mr. Obriecht filed a petition for a writ of habeas corpus in the district court, which was denied on January 23, 2003, because he had not yet exhausted his state remedies. The district court informed Mr. Obriecht that he had until March 17, 2003 (approximately sixty days) to seek post-conviction relief for his unexhausted claims to preserve the timeliness of a federal habeas petition. The court warned him specifically that "he needed to act quickly and that he risked missing the statute of limitations if he continued to wait for a lawyer to help him file his state court collateral attack."[3]

In late December 2002, Mr. Obriecht retained attorney Janelle Glasbrenner to file a state habeas petition. During January 2003, Mr. Obriecht informed Glasbrenner of the March 17, 2003 deadline for filing for state post-conviction relief. Glasbrenner, erroneously believing that the extension granted in the probation revocation matter also tolled the Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations for the 1999 convictions, responded that he did not have to worry about the deadline because it had been extended and stated that she eventually would file his claim. After being assured by Glasbrenner that his AEDPA deadline was extended beyond March 17, Mr. Obriecht was placed in medical segregation. Glasbrenner did not file any motions for state court relief on or before March 17, 2003.

On April 2, 2003, Mr. Obriecht was transferred to the Wisconsin Resource Center ("WRC"), a mental health facility. On June 17, 2003, without having filed for any state relief,

---

[3]   R.14 at 5.

Glasbrenner sought, and was granted, permission to withdraw as Mr. Obriecht's attorney.

Although still incarcerated in the WRC, Mr. Obriecht managed his legal affairs during the remainder of 2003 through June 2005. Having been adjudicated competent to proceed pro se in November 2003, he was granted permission to represent himself in another matter. He also filed briefs, motions and habeas petitions in at least five other state court actions, timely challenging other convictions. However, he did not file a state collateral challenge to his 1999 convictions, which are the basis for his habeas petition before this court, until June 20, 2005.

Once this state relief was denied, Mr. Obriecht filed a petition for habeas corpus in the district court on July 26, 2007. He conceded that his petition was untimely because he filed for relief in state court more than two years after the March 17, 2003 deadline. Nevertheless, he asked the court to deem his petition timely by equitably tolling the statute of limitations. The district court declined to do so, holding that his explanation for why he was unable to timely file did not constitute an extraordinary circumstance. The district court also determined that Mr. Obriecht had not met his burden of establishing that he had pursued his claims diligently. Mr. Obriecht timely appealed.

## II

### DISCUSSION

Mr. Obriecht concedes that his federal habeas petition is untimely. Therefore, the only issue before us is whether the

district court erred in not applying the doctrine of equitable tolling to his petition. "We review the decision to deny equitable tolling for an abuse of discretion." *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010).

"AEDPA requires a federal habeas petition to be filed within one year from 'the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Ray v. Clements*, 700 F.3d 993, 1003 (7th Cir. 2012) (alteration in original) (quoting 28 U.S.C. § 2244(d)(1)(A)). "The one-year statute of limitations can be tolled, however, if the petitioner applies for 'State post-conviction or other collateral review' of the judgment." *Price v. Pierce*, 617 F.3d 947, 950 (7th Cir. 2010) (quoting 28 U.S.C. § 2244(d)(2)). Mr. Obriecht's 1999 convictions became final on March 17, 2002. Thus, he had until March 17, 2003, to file for state post-conviction or other collateral relief,[4] which he admits he did not do. Rather, he did not file for any state relief until June 20, 2005. Given the more than two-year difference between when Mr. Obriecht's convictions became final and his state filing, Mr. Obriecht's federal habeas petition is time-barred, absent the application of equitable tolling.

The Supreme Court has explained that "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraor-

---

[4] Mr. Obriecht attempted to file a federal habeas petition in December 2002, within AEDPA's one-year limitations period. However, this petition was dismissed because he had failed to exhaust his state remedies. Thus, Mr. Obriecht had to file for state relief or review of his claim before he could file another federal habeas petition.

dinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted). Equitable tolling is an extraordinary remedy and so "'is rarely granted.'" *Simms*, 595 F.3d at 781 (quoting *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008)). The petitioner seeking equitable tolling bears the burden of establishing that it is warranted. *Williams v. Buss*, 538 F.3d 683, 685 (7th Cir. 2008).

### A. Extraordinary Circumstance

Mr. Obriecht claims that two extraordinary circumstances prevented him from meeting his AEDPA deadline: the incorrect advice of his then-attorney, Glasbrenner, and his mental health. However, before the district court, Mr. Obriecht cited the same reasons,[5] but developed arguments only with regard to Glasbrenner's conduct.[6] Accordingly, the district court considered only whether Glasbrenner's conduct constituted an extraordinary circumstance.[7] Because Mr. Obriecht failed to develop any argument concerning his mental health as an extraordinary circumstance in the district court, we do not address it here, *see Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) (finding waiver where party "failed to properly

---

[5]   R.3 at 14.

[6]   R.14 at 17-18.

[7]   *Id.*

present the issue to the district court"), and confine our inquiry to Glasbrenner's conduct.[8]

Under certain circumstances, attorney misconduct constitutes an extraordinary circumstance warranting equitable tolling, such as when the attorney "violate[s] fundamental canons of professional responsibility" by failing to communicate with his client and failing to perform necessary research.

---

[8] We recognize that in certain cases, confinement in medical segregation that prevents a petitioner from communicating with or monitoring his attorney can constitute an extraordinary circumstance. *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999); *see also Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-28 (9th Cir. 2005) (noting that a petitioner's placement in administrative segregation can, under certain circumstances, constitute an extraordinary circumstance). However, we do not consider that possibility here for several reasons.

First, Mr. Obriecht has not asserted that his February placement in medical segregation prevented him from meeting the March 17, 2003 filing deadline. Instead, he claims that he relied on Glasbrenner's erroneous advice and so believed that the deadline was tolled. *See* R.14 at 13 ("Petitioner contends that he did not file his state court motion until June 2005 because Glasbrenner had advised him (incorrectly) that his deadline for filing a federal habeas petition was tolled … ."); R.3 at 7 ("Obriecht accepted [Glasbrenner's] representation because he relied on her putative expertise … ."). This cannot be reconciled with a claim that, had he not been in medical segregation, he would have filed by March 17, 2003. Second, the record in this case does not contain evidence concerning the date of his entry into medical segregation, although he indicates that it was in February 2003 in his brief. The district court took judicial notice of an affidavit that Mr. Obriecht filed in another matter where he averred that he entered medical segregation at the WRC on March 19, 2003 — two days *after* the deadline. R.14 at 21. Given this discrepancy, the effect of Mr. Obriecht's placement in segregation is not before us.

*Holland*, 130 S. Ct. at 2564-65. However, the Supreme Court has made clear that a "garden variety claim of attorney negligence" or "excusable neglect" is insufficient. *Id.* at 2564 (internal quotation marks omitted). The Court has held that garden variety negligence includes "a simple miscalculation that leads a lawyer to miss a filing deadline" and an attorney "fail[ing] to file [a] petition on time and appear[ing] to [be] unaware of the date on which the limitations period expire[s]." *Id.* (internal quotation marks omitted); *see also Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010) (explaining that *Holland* provides that "neither a garden variety claim of excusable neglect nor a miscalculation about the time available for filing is an extraordinary circumstance" (internal quotation marks omitted)).

It is clear, therefore, that garden variety negligence includes "simple legal mistake[s]," such as an attorney's miscalculation of the filing deadline or misunderstanding of the rules governing the AEDPA deadline. *Griffith*, 614 F.3d at 331 (holding that "this kind of negligence is not 'extraordinary' by any means"). "A lawyer's ineptitude," such as his failure to meet a filing deadline also is garden variety and "does not support equitable tolling." *Lee v. Cook Cnty.*, 635 F.3d 969, 972-73 (7th Cir. 2011).

Mr. Obriecht submits that Glasbrenner's conduct amounts to gross misconduct rather than garden variety negligence. He points to her failure to meet the March 17, 2003 deadline, despite his informing her of it, and her erroneous advice, on which he relied, that the deadline had been tolled based on the extension granted in his probation revocation matter. He also contends that Glasbrenner's conduct was egregious because he "had a breakdown of communication with his attorney during

the relevant time period" and because Glasbrenner ultimately withdrew from representation without filing a state petition.[9] The district court determined that Mr. Obriecht had failed to "show[] that Glasbrenner's negligence was anything other than garden variety."[10] We agree.

Mr. Obriecht has established only that Glasbrenner incorrectly believed that his AEDPA deadline had been tolled. He has not shown or alleged on appeal that this error was anything other than an unfortunate mistake. As our precedents make clear, an attorney's misunderstanding or miscalculation of the AEDPA deadline alone does not constitute an extraordinary circumstance. *See, e.g.*, *Griffith,* 614 F.3d at 331. We can find no evidence of other conduct sufficient to constitute an extraordinary circumstance. As the district court noted,[11] Mr. Obriecht's own evidence indicates that Glasbrenner actively represented him before and after March 17, 2003, and was preparing to meet what she incorrectly believed to be the extended deadline. Indeed, she communicated with him and

---

[9]  Pet'r's Br. 26.

[10]  R.14 at 15.

[11]  *Id.* ("[I]t is ludicrous for petitioner to suggest that, because Glasbrenner did not file a state court petition, she must have done no work towards preparing one. Petitioner's suggestion is refuted by his own documents, which show that in the six months after she was hired, Glasbrenner met with petitioner in person on at least two occasions, obtained his transcripts and reviewed them, developed legal theories supporting his claims, spoke to his case worker, filed motions for extension on petitioner's behalf and, when petitioner's competence came into question, filed a motion in the circuit court for a competency determination.").

informed him of "claims she wished to raise in his state collateral challenge."[12] Thus, the only reason apparent from the record that Mr. Obriecht failed to meet the March 17, 2003 deadline appears to be Glasbrenner's error, which "is not 'extraordinary'" but rather is an "all too common" circumstance. *Griffith*, 614 F.3d at 331.

**B. Diligence**

Because we hold that Mr. Obriecht has failed to establish that an extraordinary circumstance prevented him from timely filing, we conclude that he is not entitled to equitable tolling. However, because the district court considered whether Mr. Obriecht had pursued his rights with sufficient diligence, we also address this matter.

"Equitable tolling excuses a timely filing when the [petitioner] could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." *Johnson v. McCaughtry*, 265 F.3d 559, 565 (7th Cir. 2001) (internal quotation marks omitted); *see also Holland*, 130 S. Ct. at 2565 (holding that a petitioner must prove that he used "reasonable diligence" in pursuing his claims (internal quotation marks omitted)). Thus, Mr. Obriecht must demonstrate that during the more than two years between his AEDPA deadline and the time he filed his petition in state court, he was diligently pursuing his claims.

---

[12]  Pet'r's Br. 10.

"[M]ental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996); *see also Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) (holding that petitioner seeking equitable tolling "must offer a particularized description of how her condition adversely affected her capacity to function … in relationship to the pursuit of her rights" (internal quotation marks omitted)).

The district court determined that Mr. Obriecht failed to establish that he was diligent. Before the district court and now on appeal, Mr. Obriecht offered only the conclusory statements that he suffered from mental health problems and was incarcerated in the WRC; he has not explained, or provided evidence to demonstrate, how these two facts actually impaired his ability to pursue his claims.

Moreover, the record before us casts doubt on Mr. Obriecht's claim that these two circumstances prevented him from filing in this case before June 2005. In November 2003, Mr. Obriecht was adjudicated competent to represent himself in his probation revocation matter; he has not explained how he could be competent to represent himself in that proceeding but not competent to file a petition for relief. More troubling, the district court took judicial notice of the fact that in another case before the court, Mr. Obriecht submitted an affidavit in which he stated that "[w]hen he did obtain access to the library [at the WRC], … he 'then became very occupied with two other criminal appeals …,' which prevented him from pursuing his federal claims in state court until June 20,

2005."[13] The State also has pointed out that Mr. Obriecht filed direct and collateral appeals in state court between 2003 and June 2005, the period during which he asserts that his mental health prevented him from seeking state review of his claims in this case. Mr. Obriecht has offered no explanation for how he was able to file in those cases but not in this one.

Faced with these facts, we cannot say that the district court abused its discretion when it determined that Mr. Obriecht failed to establish that he exercised the requisite reasonable diligence.

## Conclusion

Because the district court did not abuse its discretion in determining that Glasbrenner's miscalculation of Mr. Obriecht's AEDPA deadline was garden variety negligence and that Mr. Obriecht failed to prove that he was diligent, we affirm the judgment of the district court.

AFFIRMED

---

[13]  R.14 at 21. We issued an order on May 23, 2013, requesting a copy of this affidavit from the district court because it was not part of the record in this case.

   As part of that order, out of an abundance of caution, we requested copies of the papers Mr. Obriecht filed in other cases between March 2003 and June 2005. After a review of these documents, we find no prima facie evidence of incapacity.