**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3987
_____

T.R.,
Appellant
v.

DONALD HAVENS, ESQ.; COUNTY OF DELAWARE, PENNSYLVANIA;
STEVE AKPUNONU; JOHN DOE AND JANE DOE,
UNKNOWN DELAWARE COUNTY
ADMINISTRATORS SUED IN THEIR
INDIVIDUAL AND OFFICIAL CAPACITIES
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-13-cv-02931)
Magistrate Judge: Hon. Lynne A. Sitarski
_____

Argued: April 14, 2015
_____

Before: AMBRO, VANASKIE, and SHWARTZ, Circuit Judges.

(Opinion Filed: May 7, 2015)

Lesley M. Grossberg, Esq. [ARGUED]
Gary H. Levin, Esq.
Matthew J. Moody, Esq.
Ona T. Wang, Esq.
Baker & Hostetler
2929 Arch Street
12th Floor, Cira Centre
Philadelphia, PA 19104

    *Counsel for Appellant*

Suzanne McDonough, Esq. [ARGUED]
Holsten & Associates
One Olive Street
Media, PA 19063

    *Counsel for Appellees Steve Akpunonu and County of Delaware, Pennsylvania*

Mark A. Raith, Esq. [ARGUED]
Holsten & Associates
One Olive Street
Media, PA 19063

    *Counsel for Appellee Donald Havens, Esq.*

———————

OPINION[*]
———————

SHWARTZ, <u>Circuit Judge</u>.

    T.R. appeals the dismissal of his constitutional claims against the County of

Delaware, Pennsylvania ("Delaware County") and Donald Havens. We will affirm.

I

    T.R. is an attorney who suffers from bipolar disorder and depression. Following

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

the advice of his treating psychologist, T.R. drove himself to Crozer-Chester Medical Center, a hospital in Delaware County, where he was evaluated by a psychologist and then involuntarily committed for a period of up to 120 hours under 50 Pa. Cons. Stat. Ann. § 7302 ("Section 302") of Pennsylvania's Mental Health Procedures Act ("MHPA").

The next day, a psychiatrist and social worker at Crozer-Chester each told T.R. that there would be proceedings the following day regarding further involuntary commitment. The social worker gave T.R. Crozer-Chester's "Application for Extended Involuntary Treatment" to extend his involuntary commitment under 50 Pa. Cons. Stat. Ann. § 7303 ("Section 303") of the MHPA (the "Petition").[1] App. 989. The Petition stated that T.R. was examined by Dr. Ali who found T.R. "to be severely mentally disabled and in need of treatment," and requested "that [T.R.] be certified by the court for extended involuntary treatment under Section 303." App. 990–91. Another section of the Petition, labeled "The Patient's Rights," "affirmed that I [the treating physician] have informed the patient of the actions I am taking and have explained to the patient these

---

[1] Section 303 states in pertinent part:

(a) Persons Subject to Extended Involuntary Emergency Treatment. – Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to [S]ection 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.

50 Pa. Cons. Stat. Ann. § 7303(a).

procedures and his/her rights as described." App 990. Although the signature line beneath this section was blank, T.R. admitted to receiving and reviewing the section titled "The Patient's Rights" as well as the last page stating that the Petition would be considered by "the Court of Common Pleas" at a conference at which T.R. may appear and would "have the right to be represented by a lawyer."[2] App 993.

The next morning, T.R. met with Dr. Theodore Barry, a psychiatric examiner appointed by the court and who has a contract with the Delaware County Office of Behavioral Health to independently evaluate patients for whom the treating facility has applied under Section 303 to extend the commitment. According to T.R., Dr. Barry informed T.R. about what the doctors were recommending and asked T.R. whether "he agree[d] to follow his doctor's treatment plan in lieu of a hearing." App. 295. T.R. responded, "absolutely," believing that if he agreed to follow his treatment plan he would be released. App. 295. T.R. testified that Dr. Barry then said he would "make arrangements for [T.R.'s] discharge." App. 295.

Unbeknownst to T.R., Havens, an attorney appointed by the Delaware County

---

[2] The last page of the Petition, titled "Notice of Intent to File a Petition for Extended Involuntary Treatment and Explanation of Rights (303)," advises the patient that, among other things: (a) "You have the right to be represented by a lawyer at the conference. If you cannot afford to hire a lawyer, the court will appoint a lawyer for you"; (b) "You will be permitted to attend the conference. You and your lawyer will have the right to question your examining doctor and any other witnesses and to present information on your behalf"; and (c) "If your conference is before a Mental Health Review Officer and if you are not satisfied with the results of your conference, you have the right to ask for a hearing before a judge of the court." App. 993.

Court of Common Pleas to represent patients in Section 303 commitment proceedings,[3] was outside the room listening to T.R. and Dr. Barry's conversation. Dr. Barry testified that under the procedures then in place, Havens would "be brought in to discuss the issues and to plan a strategy" to contest the Section 303 application if the patient disagreed with his treating physician's recommendation for "continued inpatient care." App. 433–34. Havens testified the office door would be "left open" during these conferences, and that it was his usual practice to "stand outside the open door and listen" to "confirm" that the patient agreed with Dr. Barry's recommended treatment plan. App. 367.

At a hearing later that day, Dr. Barry advised a Mental Health Review Officer for the Delaware County Court of Common Pleas (the "Mental Health Court") that T.R. suffered from depression and had agreed to a "waiver" of a hearing and twenty days' further commitment.[4] App. 1154. After Havens corroborated Dr. Barry's testimony, the Mental Health Court found T.R. "in need of further treatment . . . for no more than 20 days." App. 1154. T.R. did not appear at the hearing and did not speak to Havens at any

---

[3] See generally 50 Pa. Cons. Stat. Ann. § 7303(b) ("Upon receiving [an] application [to extend a person's involuntary commitment], the court of common pleas shall appoint an attorney who shall represent the person unless it shall appear that the person can afford, and desires to have, private representation.").

[4] If a patient challenges his physician's Section 303 recommendation for further involuntary commitment, a hearing is held before the Mental Health Court at which the psychiatric examiner, the patient's attorney, a court reporter, and the Mental Health Court Coordinator for Delaware County are present. See generally 50 Pa. Cons. Stat. Ann. § 7303(b) ("Within 24 hours after [a Section 303] application is filed, an informal hearing shall be conducted by a judge or by a mental health review officer and, if practicable, shall be held at the facility.").

time that day.[5]  Later that afternoon, the psychiatrist and the social worker told T.R. "the judge said you . . . have to stay longer."  App. 296.  T.R. remained involuntarily committed for five additional days before being released.

T.R. filed an Amended Complaint alleging, among other things, a due process violation under 42 U.S.C. § 1983 against Delaware County and Havens.[6]  The Magistrate Judge[7] dismissed the due process claim against Havens pursuant to Fed. R. Civ. P. 12(b)(6), and granted summary judgment in favor of Delaware County pursuant to Fed. R. Civ. P. 56.  T.R. appealed.

## II[8]

---

[5] After T.R. filed this lawsuit, and at the direction of the President Judge of the Delaware Court of Common Pleas, Havens commenced meeting with each patient who is the subject of a Section 303 petition, and each patient appears before the Mental Health Court, "[r]egardless of whether they waive their rights or . . . whether they want a hearing," App. 512.

[6] The Amended Complaint also alleged violations of the Americans with Disabilities Act and the Rehabilitation Act against Delaware County, and legal malpractice against Havens.  T.R. did not appeal the dismissal of these claims.

[7] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge over "all proceedings" pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

[8] The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review of an order granting a motion to dismiss and apply the same standard as the Magistrate Judge.  See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014).  When reviewing a motion to dismiss, we must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014) (internal quotation marks omitted).

Our review of the grant of summary judgment is also plenary.  Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013).  Summary judgment is

A

We first address T.R.'s claim that Delaware County deprived him of his right to procedural due process in violation of § 1983.[9] A "local government may be sued under § 1983 only for acts implementing an official policy, practice or custom." Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984) (citing Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978)). "Thus, municipal liability attaches only when 'execution of a government's policy or custom . . . inflicts the injury.'" Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (quoting Monell, 436 U.S. at 694).

T.R. argues that Delaware County had a custom of obtaining waivers of Section 303 hearings by having "the lawyer appointed to represent [the patients] fail[] to even meet with, much less counsel them," Appellant Br. 15, and that this custom violated the requirements of Vitek v. Jones, 445 U.S. 480 (1980). In Vitek, the Supreme Court held that a state satisfies due process by complying with the following procedures before involuntarily committing an individual to a mental hospital: (1) written notice that a transfer is being considered; (2) a hearing at which the individual has notice of the evidence being relied upon for the commitment, and an opportunity to be heard and to

appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed issue is "genuine" only "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). We view the facts and draw all reasonable inferences in the non-movant's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266–67 (3d Cir. 2005).

[9] "The fundamental requirement of due process is the opportunity be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotation marks omitted).

7

present evidence; (3) an opportunity to present witnesses and to confront and cross-examine the state's witnesses; (4) an independent fact-finder; (5) a written statement by the fact-finder of the evidence relied on and the reasons for the transfer; (6) state-furnished counsel if financially necessary; and (7) "[e]ffective and timely notice of all the foregoing rights." Id. at 494–95. Notably, none of these procedures require the appointment of counsel. Indeed, a state is "not constitutionally required" to appoint a licensed attorney as long as the patient is "provided qualified and independent assistance." Id. at 500 (Powell, J. concurring).[10] Thus, the absence of counsel in this context would not provide a basis for § 1983 relief.

Moreover, T.R. has failed to raise a genuine issue of material fact as to whether Delaware County had a policy or custom of having counsel not meet with the patients and inform them of their rights. First, the unrefuted evidence demonstrates that the County provided T.R. with written notice of his right to counsel, an individual evaluation, and a conference at which he may testify, present witnesses, and question his "examining doctor and any other witnesses." App. 993. Following this procedure, Havens was appointed as T.R.'s counsel. Thus, the record shows T.R. received notice of his rights and the county had a procedure for the required hearing.

Second, there is no evidence that Dr. Barry was a county employee or

---

[10] Even if Pennsylvania law requires appointed counsel, "[s]tate law does not define the parameters of due process for the purposes of the Fourteenth Amendment," Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 195 (3d Cir. 2009), and "[t]he simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension," United States v. Jiles, 658 F.2d 194, 200 (3d Cir. 1981) (internal quotation marks omitted).

8

policymaker.[11] Dr. Barry was appointed by the court to conduct independent evaluations. Thus, his actions cannot be imputed to Delaware County. Third, even assuming that Dr. Barry was a Delaware County policymaker who deployed these procedures contrary to the teachings of Vitek in T.R.'s specific case, "[a] policy cannot ordinarily be inferred from a single instance of illegality." Losch, 736 F.2d at 911.

Finally, there is no evidence that Havens' practice of listening to the patient's meetings with Dr. Barry without entering the room or refraining from speaking to patients who agreed to follow the recommended treatment plan was a result of a direction from or policy of Delaware County. Rather, this is the approach Havens personally adopted through his "firm[]" belief that the patient's attorney "should not enter into disrupting agreements between doctors and patients," App. 439, and because "it was more therapeutic for the patient,"[12] App. 936.

Although we are troubled by T.R.'s allegations regarding the events leading to his

---

[11] Havens also testified that Dr. Barry at times went "against the [] hospital's own recommendation" as to how long the patient's commitment should last, App. 369, and that Havens "would talk to [any] patient challenging the [commitment] recommendation before the[ir] hearing[]," App. 370.

[12] The record reflects that Havens now meets with each patient. T.R. attempts to rely on the increased number of patients electing to proceed to a hearing to show that there was a practice of routinely failing to inform patients of their rights. Even if Delaware County was aware of Havens' and Dr. Barry's prior practice, the only evidence of their routine failure to inform patients of their rights comes from T.R.'s own experience and the decrease in waivers following the court's directive that Havens meet with each patient individually. Because neither piece of evidence could have put Delaware County on notice of any unconstitutional custom or practice before T.R.'s Section 303 commitment, his Monell claim fails. See Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990) (noting that plaintiffs seeking relief under § 1983 must establish "that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury").

9

extended confinement and agree that it implicated a protected liberty interest, given the absence of any Delaware County custom or policy that deprived T.R. of due process, we will affirm the grant of summary judgment on T.R.'s § 1983 claim in favor of Delaware County.

## B

T.R. also challenges the dismissal of his § 1983 claim against Havens. "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). T.R. argues that Havens is: (i) a state actor performing administrative functions; or (ii) a private party who acted in concert with the state such that he may still be liable.

We reject both theories. While Havens is court appointed, and his "employment relationship" with the state is "certainly a relevant factor," Polk Cnty. v. Dodson, 454 U.S. 312, 321 (1981), "[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their positions as officers of the court," Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999); Polk, 454 U.S. at 325 ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). Here, T.R.'s claims arise from acts Havens performed pursuant to his court-appointed representation of T.R. See, e.g., App. 82 ("Had Plaintiff had the opportunity to speak with Havens and receive the assistance of counsel in these proceedings, he would have told Havens that Havens did not have the authority to waive Plaintiff's right to a

10

hearing."). Thus, under <u>Polk</u>, the Magistrate Judge correctly determined that Havens was not a state actor.

Moreover, although a court-appointed attorney "may" act under color of state law "while performing certain administrative and possibly investigative functions," <u>Polk</u>, 454 U.S. at 325, T.R. fails to plausibly allege any acts by Havens that might permit him to invoke this so-called "administrative-action exception," <u>Powell v. Davis</u>, 415 F.3d 722, 727 (7th Cir. 2005) (hiring and budget decisions fall within the administrative action exception but case management priorities do not). Havens' alleged "custom of not meeting with the clients whom he has been appointed to represent and not consulting with them about their right to a hearing," App. 80, is "akin to the traditional functions of a law firm," not an administrative act, and "therefore is not state action," <u>Powell</u>, 415 F.3d at 727–28.[13]

We also reject T.R.'s alternative theory that Havens was a private party acting "in concert" with the state. <u>Kach</u>, 589 F.3d at 646. To determine whether a private party has functioned as a state actor, we consider, among other things, "whether the private party

---

[13] Indeed, T.R. does not allege that Havens lacked the discretion to adopt whatever practices he believed would best advance his client's interests. T.R. also does not allege any administrative policy that interfered with Havens' ability to properly represent the patients. <u>Cf.</u> <u>Powers v. Hamilton Cnty. Pub. Defender Comm'n</u>, 501 F.3d 592, 611–13 (6th Cir. 2007) (county public defender's office and commission were state actors for "systematically violat[ing] class members' constitutional rights by failing to represent them on the question of indigency" where the plaintiff "d[id] not seek to recover on the basis of the failures of his individual counsel, but [for] an alleged agency-wide policy . . . of routinely ignoring the issue of indigency in the context of non-payment of fines"); <u>Miranda v. Clark Cnty., Nev.</u>, 319 F.3d 465, 469 (9th Cir. 2003) (en banc) (county public defender fell within administrative action exception where he was "acting solely as the administrative head of the agency" and was "responsible for allocating the office's finite resources").

has acted with the help of or in concert with state officials." Id. (internal quotation marks and alterations omitted).

T.R. argues that Havens and Delaware County acted in concert by "jointly conducting" unconstitutional commitment hearings. Appellant Br. 35. However, the Amended Complaint contains no plausible allegations to support this theory—only bare conclusions that, for example, Delaware County "is and has been aware of Havens' de facto policy" and has known "for at least several years" of Havens' "usual practice . . . not to speak to his clients about their right to a hearing." App. 80–81. "Mere approval of or acquiescence in the initiatives of a private party," however, is insufficient to demonstrate state action under the Fourteenth Amendment. Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). Thus, T.R.'s allegations "do[] not plausibly suggest" concerted action between Havens and Delaware County. Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010) (denying leave to amend to add § 1983 conspiracy claim against state court judges for alleged "concerted action" with attorneys).

We will therefore affirm dismissal of T.R.'s § 1983 against Havens.

III

For the foregoing reasons, we will affirm.