Raymond POWELL, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9611–CR–729.

Supreme Court of Indiana.

July 20, 1999.

Ann M. Skinner, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Raymond Powell was convicted of the murder of Marquise McVea and the attempted murder of Aaron Jones. He was sentenced to consecutive terms of sixty years and thirty-five years respectively. He raises four issues for our review: (1) whether he is entitled to a new trial because of the newly

discovered evidence that one of the State's witnesses offered perjured testimony at his trial; (2) whether the trial court erred in overruling his hearsay objection; (3) whether a detective gave improper "vouching" testimony; and (4) whether the trial court erred in admitting a mug shot of a codefendant. We affirm the trial court.

### Factual and Procedural Background

On February 14, 1996, Aaron Jones was looking for his friend Marquise McVea outside the Meadows Apartments in Indianapolis. Jones came upon a group of six or seven men, three of whom he knew. After a brief argument with one of the men, Jones continued to walk toward McVea who was seated in his truck. As Jones walked around toward the front of the truck, the group of men dispersed. According to Jones, one of the group approached the truck and said "something, a smart remark, whatever, and he said something about, what, you think we ain't got guns, too, or whatever." A second, whom Jones described as having a birthmark on his face, was standing by one of the apartment buildings. A third remained near a sidewalk behind the truck. Jones did not know any of the three who remained. The man with the birthmark said that "if McVea ma[d]e the first move he was the one that was going to get it." Gunfire erupted. McVea died of a gunshot wound to the chest, but Jones survived. According to Jones, McVea was carrying a gun but never drew it. Jones saw all three men firing guns. Jones later identified three men from three separate photo arrays as Robert Burch, Raymond Powell, and James Wright. The three were charged with murder and attempted murder. Powell was apprehended first and tried individually while Burch and Wright remained at large.

Before Powell's trial, Jones gave a deposition in which he stated that he did not have a weapon at the time of the shooting and also denied that he carried a weapon at any time. At Powell's trial, Jones again denied that he had a weapon at the time of the shooting or at any time on the day of the shooting. Powell was convicted of both counts in a trial that concluded on June 4, 1996. Appellate counsel was appointed for Powell and the record of proceedings in his direct appeal was filed on February 7, 1997.

Almost a year after Powell's trial, Jones testified as a defense witness in an unrelated handgun prosecution of James Carey. Jones testified in that case that he had a gun on his person on the day McVea was killed, but did not draw the weapon. He testified that the gun disappeared sometime after he was shot and rendered unconscious. Two weeks later, he gave a deposition in Wright's case in which he denied that he was carrying a gun at the time of the shooting or at any time on the day of the shooting. Finally, two months later at Wright's trial, Jones testified that he and McVea were both drug dealers, that he had had a verbal altercation with Powell and others over drug turf, that "everybody" including him "pulled out guns and was out there pistol playing," that he put his gun in his apartment after the altercation and was not carrying it at the time of the shooting, and that he had lied under oath in the Carey trial.

In June 1997, the State filed a Supplemental Discovery Response with the trial court in Powell's case that included a transcript of Jones' testimony in Carey's trial. Powell filed a petition in this Court to suspend or stay his direct appeal in order to pursue postconviction relief in the trial court. The motion was granted, and Powell then filed a petition for postconviction relief in the trial court alleging that newly discovered evidence entitled him to a new trial. The petition for postconviction relief was denied after a hearing, and the direct appeal was reinstated and consolidated with the appeal of the denial of postconviction relief.

### I. Newly Discovered Evidence

■ Powell argues that he is entitled to a new trial based on the newly discovered evidence of Jones' evolving testimony. The sole issue presented in Powell's petition for postconviction relief was Jones' alleged perjury on the issue of whether he was carrying a weapon at the time of the shooting. There was no claim based on Jones' or McVea's possible status as a drug dealer. Because issues based on a claim of drug dealing were not presented to the trial court, they may not now be raised on appeal. *See Canaan v.*

*State,* 683 N.E.2d 227, 235 (Ind.1997) ("[C]laims not advanced until appellant's brief in an appeal from the denial of post-conviction relief are waived."). Accordingly, we address the claim of newly discovered evidence only as it relates to the claim that Jones perjured himself in his testimony on whether or not he was carrying a handgun.

■ In order to obtain relief because of newly discovered evidence, a defendant must show that (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result. *Webster v. State,* 699 N.E.2d 266, 269 (Ind.1998) (citing *Bradford v. State,* 675 N.E.2d 296, 302 (Ind.1996)).

The trial court entered detailed findings of fact and conclusions of law when it denied Powell's petition for postconviction relief. It found that Powell had established prongs 1, 3, 4, 5, and 6. It also found that Powell met one-half of the second prong, by showing that the newly discovered evidence was relevant but did not establish that it was material. Therefore, what remains is whether the newly discovered evidence is material, worthy of credit, capable of being produced at a retrial, and likely to produce a different result.

■ To prevail on appeal, Powell must demonstrate that the newly discovered evidence met all nine prerequisites of *Webster* and that the trial court abused its discretion by failing to find so. 699 N.E.2d at 269. In ruling on Powell's petition, it was the trial court's province to assess the credibility of the proffered evidence. *Id.* The trial court found that it "cannot conclude that the testimony given subsequent to trial which is inconsistent with the trial testimony is any more worthy of credit than the testimony given at [Powell's] trial." Of the five accounts detailed above, Jones stated that he had a gun at the time of the shooting in only

one (testimony at Carey's trial). He expressly recanted this version in his subsequent sworn testimony on the subject (Wright's trial). In addition to doubts raised by Jones' inconsistent accounts, the trial court observed that both the State and Powell were unable to locate Jones to present his live testimony at the postconviction hearing, which it found to cast further doubt on the possibility of Jones' production at a retrial. For these reasons, the trial court did not abuse its discretion when it found that Jones' subsequent and varying accounts were not material, worthy of credit, capable of being produced at a retrial, or likely to produce a different result.

## II. Questions as Hearsay

Jones testified on direct examination that one of the three men involved in the shooting "said something about, what, you think we ain't got guns, too, or whatever." Defense counsel objected on the basis of hearsay and asked that the testimony be stricken. The State responded that it was a report of a question, which "by its very nature" was not hearsay. The trial court overruled the objection and instructed the jury that it was "only to take this evidence as a fact that a question was asked, not to prove the truth of the matter contained within that question."

■ The State contends that because the utterance was a question, it contained no assertion of fact. Citing *Craig v. State,* 630 N.E.2d 207 (Ind.1994),[1] it argues that an utterance that does not assert a fact susceptible of being true or false cannot be hearsay. We agree with this principle, but do not agree that an assertion can never be found in a question or command. Hearsay is an out-of-court "statement" offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). A "statement" is defined as an oral or written assertion. Evid. R. 801(a)(1). The Evidence Rules make no mention of the grammatical form of the statement. Indeed the Rules explicitly provide that nonverbal conduct can be a "statement." Evid. R. 801(a)(2). If so, verbal conduct intended to

---

1. Although the trial in *Craig* predated the adoption of the Indiana Rules of Evidence, this Court nevertheless cited the Rules, which were consistent with pre-Rules decisional law, throughout its opinion.

assert a fact but phrased as a question is equally capable of being a "statement."

This conclusion is consistent with the fundamental purpose of the hearsay rule to preserve the right to cross examine the declarant. *See Cain v. State*, 261 Ind. 41, 45, 300 N.E.2d 89, 92 (1973) (citing 5 WIGMORE ON EVIDENCE § 1362, at 3–7 (3d ed.1940)). If a report of a question or command in effect transmits the questioner's claimed observations, the need for cross examination is as great as if the witness reported a direct statement. Other states agree. *See, e.g., Carlton v. State*, 111 Md.App. 436, 681 A.2d 1181, 1184 (1996) (questions "Does Mr. Zinkhan have an alarm?" and "What time, if ever, will Mr. Zinkhan leave?" made no explicit or implied assertion and were therefore not hearsay); *State v. Saunders*, 23 Ohio App.3d 69, 491 N.E.2d 313, 318 (1984) (in prosecution for robbery of several hundred dollars of coins from laundromat, defendant's companion asking motel employee if employee could use some spare change was hearsay because it asserted and was offered to prove that companion had access to spare change that she wished to exchange for paper currency); *Brown v. Commonwealth*, 25 Va.App. 171, 487 S.E.2d 248, 251–52 (1997) (because question "Does Peggy know I am here?" necessarily implies or asserts that declarant knew Peggy (the victim) personally and was offered to prove that the defendant knew Peggy, it was hearsay).

Some commands ("Tell me your name!") or questions ("What is your name?") have no factual content and clearly are not assertions. Based on this, some treatises suggest, consistent with the State's view at trial, that all questions are ipso facto not hearsay. *See, e.g.,* DAVID F. BINDER, HEARSAY HANDBOOK 19 (3d ed. 1991) ("A *question* is not hearsay.") (emphasis in original); 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.02[3][b] (1999) ("An inquiry is not an assertion, and is not hearsay."). Although it is true that most questions or inquiries are not hearsay, the cases cited by these treatises make clear that that is not always the case. *See, e.g., United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir.1990) ("The questions asked by the unknown caller, like most questions and inquiries, are not hearsay because they do not, and were not intended to, assert anything.") (cited in both treatises). An utterance that is in the form of a question can in substance contain an assertion of a fact. The classic example is "Joe, why did you stab Bill?" There may be other exceptions to the hearsay rule permitting witnesses to testify to such a "question," but a report of hearing this question is not admissible to prove that Joe stabbed Bill on the ground that it is not hearsay at all. Rather, such an utterance clearly carries a factual allegation within it, and should be subject to cross-examination unless exempt for some other reason. The utterance at issue in this case asserted that the men in the group confronting Jones and McVea were carrying guns, and that of course is susceptible of being true or false.

To run afoul of the hearsay rule the evidentiary purpose of the proffered statement must be the truth of the matter asserted. Evid. R. 801(c). In this case, the alleged hearsay testimony came in a line of questioning regarding the "nature of [the] conversation" between Jones and the three men at the Meadows. Although the State argued at trial that a question "by its very nature" cannot be used to prove the truth of the matter asserted, the trial court's admonishment to the jury plainly demonstrates the possibility that the factual content of a question may be offered for the truth of the matter asserted. Despite the trial court's admonishment, we agree with Powell that "it is difficult to imagine how the alleged 'question' of the unidentified declarant, offering the remark that the group possessed guns, could be admitted for some purpose other than the truth of the matter asserted." The State offers no alternative purpose. We conclude that the utterance here was offered for the truth of the matter asserted and therefore is hearsay.

[12] Although Powell's hearsay objection should have been sustained, the erroneous admission of this utterance was nevertheless harmless. *See Fleener v. State*, 656 N.E.2d 1140 (Ind.1995); Ind. Trial Rule 61. The fact asserted in the question, that the men had

guns, was established beyond doubt moments later when the three men opened fire. There is no realistic possibility that this ruling affected Powell's substantial rights.

## III. Vouching Testimony

During redirect examination of the lead detective in the case, the State asked "whether or not witnesses like Aaron Jones, who are either victims of crimes or witness crimes, sometimes are reluctant to talk with police." Defense counsel interposed the following objection: "My objection is, what is like Aaron Jones? Why don't we just ask the question, are all witness or victims of crime reluctant to talk to police officers. Or if he's going to say like Aaron Jones, he should be specifying what he means by like Aaron Jones." The trial court overruled the objection, and the detective answered "No, sir, he's not unusual."

 Powell argues that this "amounted to vouching or explaining the testimony." He cites *Head v. State*, 519 N.E.2d 151, 153 (Ind.1988), which held that it was improper for a psychologist testifying for the State in a child molesting case "to review each item of the child's testimony and to specifically vouch for the truthfulness of such testimony." This Court found this to be error because the psychologist's "testimony was an invasion of the province of the jury in determining what weight they would place upon the child's testimony." *Id.* In this case, however, the detective merely testified that is was not unusual for Jones, like other crime victims or witnesses, to be reluctant to talk to police. Suggesting that witnesses are sometimes reluctant to talk to police does not vouch for a witness's truthfulness. *Cf. Edgin v. State*, 657 N.E.2d 445, 447 (Ind.Ct.App.1995) (detective's testimony that the victims "seemed very credible" was improper vouching testimony). The testimony here was not improper under *Head* or Evidence Rule 704(b), which prohibits witnesses from offering opinions concerning "whether a witness has testified truthfully...." *Cf. Bufkin v. State*, 700 N.E.2d 1147, 1150 (Ind.1998) (Rule 704(b) violated by police officer offering opinion that he found a witness's testimony credible).

## IV. Mug Shot of Codefendant

During the investigation of McVea's killing, a detective showed Jones three photo arrays from which Jones picked out the three men who shot at him and McVea. Two of those arrays contained no indication that they were comprised of mug shots. The third, however, consisted of six separate photographs of men with prominent height chart markings behind them. Defense counsel objected on the basis that "the jury might find [Powell] guilty by association because he's allegedly hanging around with alleged convicted felons...." The State responded that "these are the best pictures that [it] could get," and argued that the array was relevant and probative because it demonstrated that Jones "was able to pick these three individuals out." The trial court found that the array was comprised of "what you call traditional mug shots," but the booking placards had been covered and only the height chart remained visible. In overruling the objection, the trial court observed that "the State has taken as many steps as they can to conceal the fact that they are a mug shot. The detective has been careful not to use that phrase when describing the photographs, as has the State...."

 We review the admission of photographic evidence for an abuse of discretion. *Humphrey v. State*, 680 N.E.2d 836, 842 (Ind.1997). To constitute error, the probative value of the photograph must be substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403. Powell contends that the mug shots would allow the jury to suspect that Powell chose to associate with a "convicted felon," thereby creating "an impermissible 'guilty by association' inference." We disagree. At most the mug shot demonstrates that Wright, not the defendant, had been previously arrested. The arrest could have been for a misdemeanor, charges may never have been filed, or charges may have been resolved short of a conviction through dismissal or acquittal.

The probative value of these photographs was significant because it explained to the jury how Jones came to identify all three of the shooters. The danger of unfair prejudice was minimal, in that the mugshot was not of

the defendant himself but merely of one of his codefendants and no mention of a prior arrest or conviction was made to the jury. The trial court did not abuse its discretion by admitting the mug shot of Powell's codefendant.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.