FILED

Oct 09 2018, 10:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



**ATTORNEY FOR APPELLANT**

Nicole A. Zelin
Pritzke & Davis, LLP
Greenfield, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Wade Baker, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 9, 2018

Court of Appeals Case No.
30A01-1710-CR-2511

Appeal from the Hancock Superior
Court

The Honorable Dan E. Marshall,
Judge

Trial Court Cause No.
30D02-1705-F6-1078

**Darden, Senior Judge.**

# Statement of the Case

James Wade Baker, Jr., appeals his convictions by jury of resisting law enforcement by use of a vehicle, a Level 6 felony,[1] and driving while suspended with a prior similar offense within the past ten years, a Class A misdemeanor.[2] We affirm.

# Issues

Baker raises three issues, which we consolidate and restate as:

I.  Whether under the circumstances, the trial court erred in admitting into evidence a witness's statement by an unnamed, absent person; and

II.  Whether under the circumstances, the trial court erred in admitting into evidence a witness's description of Baker's statement while in custody.

# Facts and Procedural History

On the evening of May 23, 2017, Deputy Donald Stegman of the Hancock County Sheriff's Department was on patrol in a fully marked police car. He encountered a black Honda sedan and checked the vehicles license plate number in the Bureau of Motor Vehicle's online records. Stegman discovered the license plate number was assigned to a tan Chevy SUV.

---

[1] Ind. Code § 35-44.1-3-1 (2016).

[2] Ind. Code § 9-24-19-2 (2016).

[4] At that point, Deputy Stegman activated his red and blue flashing lights to signal the driver of the Honda to stop. Instead of stopping, the Honda accelerated and fled from Stegman. Stegman pursued the Honda from Hancock County into Marion County on Washington Street. The Honda traveled at a very high rate of speed in a high-traffic area, driving through several red lights. Stegman notified dispatch he was going to end his emergency pursuit due to the Honda's unsafe speed and the driver's erratic behavior in a busy area.

[5] Meanwhile, Mindy Castaneda was a passenger in a car at the intersection of Washington Street and Mitthoefer Road in Marion County, waiting for the light to change. She saw a car drive into the intersection at a high rate of speed, crash into a median, and come to a stop. Two people exited the car: a male from the driver's seat and a female from the front passenger's seat. Castaneda later testified that she observed both the driver and the passenger run away from the scene of the incident. Castaneda testified in court that she identified Baker as being the driver of the car. There were other witnesses who observed two people run away from the scene as well. The female passenger ran toward a dumpster. The male ran in another direction.

[6] Shortly thereafter, Deputy Stegman arrived at the intersection and saw the wrecked, empty Honda. Castaneda and other eyewitnesses described Baker and the female passenger to Stegman and the directions in which they fled from the scene. Other officers arrived at the scene and set up a perimeter around the area.

[7] Officers quickly apprehended the female suspect behind a dumpster. Meanwhile, Officer Kevin Stickford responded to the scene with his K-9 unit, Pepo. Testimony was presented as to how Pepo was trained to track suspects and to perform area searches. Officer Stickford and Pepo searched in the direction where the male suspect had fled and found a long-sleeved shirt on the ground. Next, Pepo led Stickford to a fenced area, where Stickford saw an individual, later identified as Baker, lying on the ground. Stickford ordered Baker to surrender, but he got up and jumped over the fence. Another officer was waiting on the other side of the fence and captured him. No one else was found in the area where Baker was apprehended except Baker and the officers.

[8] The officers placed Baker in handcuffs and moved him to a location where he was ordered to sit on a curb surrounded by several officers. Stickford, over objection, later testified that he saw and heard another officer ask Baker "why he ran." Tr. Vol. 2, p. 131. Stickford further testified that Baker responded, "because he was scared." *Id.* at 132. Upon arriving at Baker's location, Deputy Stegman saw that Baker had a cut on the bridge of his nose. Stegman testified that in his experience, the type and location of the injury to Baker was consistent with a person being in an automobile accident while driving a car.

[9] Baker and the female suspect were taken to the Hancock Country Jail. The two were placed together on a bench during processing, and Deputy Stegman observed them whispering to one another as if they previously knew each other.

[10] On May 24, 2017, the State charged Baker with resisting law enforcement by use of a vehicle, a Level 6 felony; auto theft, a Level 6 felony; and driving while suspended with a prior similar offense within the past ten years, a Class A misdemeanor. The State further charged Baker with being an habitual offender.

[11] The case was tried by jury on August 22, 2017. Prior to trial, the State dismissed the count of auto theft. The jury found Baker guilty of resisting law enforcement and driving while suspended. Next, Baker waived his right to a jury trial on the habitual offender enhancement. The trial court heard evidence and determined Baker was an habitual offender. The court subsequently imposed a sentence, and this appeal followed.

# Discussion and Decision

## I. Admission of Officer's Testimony About Another Officer's Question

[12] Baker argues the trial court erred in allowing Officer Stickford to testify that another officer asked Baker "why he ran." Tr. Vol. 2, p. 131. Specifically, he argues that under the circumstances, Officer Stickford's description of the unidentified and absent officer's question was inadmissible hearsay.

[13] A trial court has broad discretion to admit or exclude evidence, including purported hearsay. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). We therefore disturb its ruling only if it amounts to an abuse of discretion, meaning the court's decision is clearly against the logic and effect of the facts and circumstances or it is a misinterpretation of the law. *Id.*

[14]   Hearsay is a statement that "is not made by the declarant while testifying at the trial or hearing; and . . . is offered in evidence to prove the truth of the matter asserted." Ind. Evid. Rule 801(c). Hearsay is not admissible in court. Ind. Evid. Rule 802. On the other hand, an utterance that does not assert a fact susceptible of being true or false cannot be hearsay. *Powell v. State*, 714 N.E.2d 624, 627 (Ind. 1999).

[15]   In *Powell*, an eyewitness testified that prior to being shot at by a group of men, one of the men asked, "you think we ain't got guns, too, or whatever." *Id.* at 626. The eyewitness testified about the matter at trial. On appeal, Powell claimed the question was inadmissible hearsay. The State responded that a question cannot be considered hearsay because there is no assertion of fact. The Indiana Supreme Court determined that "an utterance that is in the form of a question can in substance contain an assertion of fact." *Id.* at 628. The Court further stated, "The classic example is 'Joe, why did you stab Bill?" *Id.* "[S]uch an utterance clearly carries a factual allegation within it, and [the original declarant] should be subject to cross-examination unless exempt for some other reason." *Id.* The Court concluded the question about gun possession was offered for the truth of the matter asserted and was hearsay. *Id.*

[16]   In this case, Officer Stickford testified that he observed and heard an unidentified officer ask Baker, "why he ran." That question, like the "classic example" discussed in the *Powell* case, 714 N.E.2d at 628, contains a factual utterance that is capable of being proven true or false, specifically that Baker ran

away. We conclude the question was offered for the truth of the matter asserted and should not have been admitted into evidence. *See id.*

[17] The State notes that a statement that otherwise meets the definition of hearsay is not considered hearsay if the statement is "offered against an opposing party" and that party "manifested that it adopted" it or "believed [it] to be true." Ind. Evid. Rule 801(d)(2). The State further claims Baker effectively adopted the officer's question as his own statement by answering it. We disagree. The Indiana Supreme Court has stated with respect to adoption of another person's statement: "Silence or an equivocal response to an assertion of fact, which, if true, a reasonable man would be expected to deny, is admissible as evidence tending to show the truth of the assertion, if the person is not in custody when the assertion is made, and the person has an opportunity to speak." *Robinson v. State*, 266 Ind. 604, 611-12, 365 N.E.2d 1218, 1223 (1977) (citations omitted). Herein it is undisputed that Baker had been apprehended, handcuffed, and ordered to sit on a curb, and was surrounded by several police officers when the unnamed officer asked Baker the question at issue. Baker was obviously in custody, and so Rule 801(d)(2) does not apply.

[18] However, our analysis does not end with our determination that the admission of the question and response was an abuse of discretion by the trial court. The erroneous admission of hearsay testimony does not necessarily require reversal unless it prejudices the defendant's substantial rights. *Blount*, 22 N.E.3d at 564. To determine whether an evidentiary error was so prejudicial, we assess the probable impact the evidence had upon the jury's verdict in light of all the other

evidence that was properly presented. *Id.* If we are satisfied the conviction is supported by independent evidence of guilt such that there is little likelihood the challenged evidence contributed to the verdict, the error is harmless. *Id.*

[19] In this case, witness Mindy Castaneda testified that she saw Baker exit the wrecked automobile from the driver's seat and run away. She further identified Baker in court as the person she saw at the scene. She also observed a female suspect exit the car and run toward a dumpster. Deputy Stegman arrived at the scene soon thereafter and recognized the wrecked car as the Honda he had been pursuing.

[20] Other officers established a perimeter around the area of the wreck and quickly arrested the female suspect behind the dumpster. Meanwhile, Officer Stickford and his K-9 performed an area search within the perimeter, moving north in the same direction Baker had been seen running. The K-9 located a long-sleeved shirt. Next, Stickford saw Baker lying on the ground near a fence and ordered him to surrender. Baker instead jumped over the fence, where he was apprehended by another officer. When Deputy Stegman arrived where Baker was being kept in custody, the deputy noticed that Baker had an injury to the bridge of his nose. The location of the injury was consistent with the type of injury Stegman had seen other motorists sustain in car accidents.

[21] Later, at the Hancock County Police station, Baker was seated on a bench with the female suspect. Deputy Stegman observing them conversing in whispers in a manner that indicated that they knew one another. This independent

evidence of guilt is sufficient to establish that there is little likelihood the officer's question contributed to the jury's verdict. We conclude admission of the officer's question and response into evidence was harmless error.

[22] Baker further argues that admission of Officer Stickford's testimony about the unnamed officer's question also violated his Sixth Amendment right to confront witnesses because the officer should have been brought to court to testify. Baker acknowledges he did not cite the Sixth Amendment when he objected to Stickford's testimony. Appellant's Br. p. 17. As a result, the claim is waived. *See Torres v. State*, 12 N.E.3d 272, 274 (Ind. Ct. App. 2014) (Sixth Amendment claim waived due to failure to raise it during trial), *trans. denied*.

[23] We have already determined that admission of the question into evidence was an abuse of discretion because it was hearsay. Even if Baker had not waived his Sixth Amendment claim, and even if admission of the question violated Baker's right to confront witnesses, such violations "do not require reversal if the State can show beyond a reasonable doubt that the error did not contribute to the verdict." *Koenig v. State*, 933 N.E.2d 1271, 1273 (Ind. 2010). That is to say, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Id.*

[24] In light of the considerable evidence we have set forth above, we conclude beyond a reasonable doubt that Officer Stickford's description of the unnamed

officer's question did not contribute to the jury's verdict. As a result, any Sixth Amendment violation was harmless.

## II. Admission of Officer's Testimony About Baker's Response to Another Officer's Question

Baker next argues the trial court erred in allowing Officer Stickford to testify about Baker's response to the unidentified and unnamed officer's question of why he ran. Baker specifically claims that when the officer questioned him, he was in custody, had not been read his *Miranda* rights, and as a result his statement was inadmissible. As noted above, we generally review the admission of evidence for an abuse of discretion. However, Baker concedes that he did not contemporaneously object to Stickford's description of his response. Appellant's Br. p. 20. As a result, Baker further concedes he must demonstrate that the admission of testimony describing his answer was fundamental error.

A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors. *Id.*

Fundamental error is an "extremely narrow exception" to the contemporaneous objection requirement. *Gavin v. State*, 41 N.E.3d 1038, 1042 (Ind. Ct. App. 2015). In evaluating the issue of fundamental error, our task is to look at the

alleged misconduct in the context of all that happened and all relevant information given to the jury - including evidence admitted at trial, closing argument, and jury instructions - to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *Id.* Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred. *Id.*

[28] The Fifth Amendment provides, in relevant part, that no person "shall be compelled in any criminal case to be a witness against himself . . . without due process of law." As a result, the State may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S. Ct. at 1612.

[29] In this case, Baker was undoubtedly in custody when he responded to the officer's question by stating that he was scared. Baker was in handcuffs and had been moved from the site of his apprehension to an area where he was surrounded by police officers, and he was ordered to sit on a curb. Further, the State does not point to any evidence that any of the officers had informed Baker of his *Miranda* rights before the officer asked Baker why he ran.

[30] Nevertheless, considering the extensive evidence presented at trial, we cannot conclude any error in the admission of Baker's response amounted to fundamental error. Eyewitness testimony established that Baker drove the car that Deputy Stegman followed from Hancock County into Marion County. Further, officers found Baker by searching in the direction where the eyewitness stated he had run. No other persons were found in the area of Baker's apprehension. Stegman noted that Baker had a nose injury that commonly occurs to drivers involved in auto accidents. We cannot conclude herein that admission of Baker's answer to the officer's question, although in error, was so egregious as to render a fair trial impossible. Baker has failed to demonstrate fundamental error.

## Conclusion

[31] For the reasons stated above, we affirm the judgment of the trial court.

[32] Affirmed.

Vaidik, C.J., and Baker, J., concur.