## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2020, 6:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Damion Cobb,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

January 31, 2020

Court of Appeals Case No.
19A-CR-762

Appeal from the Marion Superior Court

The Honorable Grant Hawkins, Judge

Trial Court Cause No.
49G05-1601-MR-2269

**May, Judge.**

[1] Damion Cobb appeals his conviction of felony murder.[1] He raises one issue for our review, which we revise and restate as whether the trial court committed reversible error by allowing testimony about Cobb's identity at trial. We affirm.

## Facts and Procedural History

[2] On January 15, 2016, Kiree Hayes walked into the Cumberland Express Mart at 6:56 p.m. Hayes' face was uncovered, and he was wearing Lawrence North sweatpants and a Michael Kors sweatshirt. Hayes bought a cigar and left the store. Brittany Thompson and one of her friends were in the store with the store clerk, Khushwinder Singh. Thompson was about to start working as a clerk at the gas station, and after Hayes left the store, she went behind the counter with Singh so that he could teach her about the job.

[3] Shortly after Hayes left the store, two black males wearing hoods and bandanas over their faces entered the store. One of the males had on a pair of pants with a dark patch on the side around the right knee. One masked figure pulled out a silver revolver, and the other pulled out a handgun partially covered with a surgical glove. They announced their intention to rob the gas station. Singh was behind the counter on the phone when the two males entered. He put his phone down and said something in a foreign language, and then one of the masked figures shot him. Singh fell backwards against a cigarette case. The

---

[1] Ind. Code § 35-42-1-1(2).

masked figures directed Thompson to open the cash register. When Thompson responded that she did not know how to open the cash register, one of the men said "F[***] this place" and they ran out. (Tr. Vol. II at 120.)

[4] Around this same time, Randall Canter and his fiancé Alicia Demoss were walking to the Express Mart in order to buy cigarettes. As they approached the Express Mart, they saw a white Dodge Stratus idling in the middle of the street. They then saw two men in dark clothes run past them, the men got into the Dodge Stratus, and the Dodge Stratus quickly drove away. They tried to go inside the Express Mart, but Thompson told them the gas station was closed. Canter and Demoss then walked to another gas station. Officers and paramedics arrived at the Express Mart, and paramedics pronounced Singh dead at the scene. When Canter and Demoss returned to their apartment, they walked past the Express Mart and told police what they had witnessed.

[5] Around 9:20 p.m., two masked individuals walked into a Rich Oil gas station. One of the men asked the clerk to open the cash register and hit the clerk on the head with a gun. The clerk surrendered approximately seventy dollars from the register, and the two men left the store. Sheldon and Theresa Hunter observed the two men run out of the gas station, get into a white Dodge Stratus, and drive away. The Hunters called 911 and followed the Dodge Stratus for a time.

[6] Deputy Loran Wilber and Deputy Drew Butner of the Marion County Sheriff's Office were on patrol when they received a report regarding the Rich Oil gas station robbery. A description of the vehicle and its direction of travel were also

relayed over the police radio. The deputies responded and came across a white Dodge Stratus in a ditch in a residential area. Because no one was in the car, the deputies set up a perimeter around where the vehicle was found. Deputy Wilber and Deputy Butner encountered Hayes and Tyler Miller approximately one block southeast of the Dodge Stratus and detained them. Officer Allen Weir of the Indianapolis Metropolitan Police Department also responded to the area. Approximately two blocks east of the Dodge Stratus, Officer Weir encountered and detained Cobb, who was wearing a pair of pants with a dark patch over a pocket on the side around the right knee.

[7] Officers examined the vehicle and the area around where the Dodge Stratus was found. Hayes' driver's license was found inside the Dodge Stratus, and Hayes had a set of keys to the car when he was detained. The officers found footprints not too far from a shed close to where the Dodge Stratus was left. Underneath the shed, officers found a silver revolver and a dark piece of clothing. Also, officers found pair of Lawrence North sweatpants and a semiautomatic pistol inside a tire located about ten to twelve feet away from the shed. Forensic analysis identified the semiautomatic pistol as the gun that fired the bullet that killed Singh. Officers showed the abandoned Dodge Stratus to Demoss, Canter, and the Hunters. Demoss and Canter identified it as the vehicle they saw leaving the Express Mart, and the Hunters identified it as the vehicle they saw driving away from the Rich Oil gas station. The next morning, a nearby property owner contacted police after he discovered a Michael Kors sweatshirt on his property.

[8] For acts committed at Express Mart, the State charged Cobb with murder,[2] felony murder, and Level 2 felony robbery resulting in serious bodily injury.[3] For acts committed at Rich Oil, the State charged Cobb with Level 3 felony robbery resulting in serious bodily injury[4] and Level 5 battery by means of a deadly weapon.[5] The court tried Cobb, Hayes, and Miller together during a three-day jury trial. Prior to trial, the State moved to dismiss the murder charge. During trial, the State presented several still frame shots from surveillance video at the Express Mart as exhibits. The State questioned Detective Susan Woodland of the Cumberland Police Department regarding the Exhibits, and the following exchange occurred:

> Q: State's 15, what are we looking at here?
>
> A: Two suspects walking on the side of the business of the Cumberland Express Mart.
>
> Q: And is there anything of note the way they—this camera's capturing the (indiscernible)?
>
> A: Yes. Specifically, the second person is Mr. Cobb.

---

[2] Ind. Code § 35-42-1-1(1).

[3] Ind. Code § 35-42-5-1.

[4] Ind. Code § 35-42-5-1.

[5] Ind. Code § 35-42-2-1.

Q: Well, without identifying ultimately who we think each individual is, the second individual, what about this camera is –

A: He had –

Q: --(indiscernible) to you?

A: He had a type of jeans that he was wearing that where [sic] that dark piece is around where his knee line is, that's where a pocket is.

Q:  Is that what the—clothing looks like in normal light?

A: No, it is not.

Q: Okay.  What are we looking at here?

A: The view of the Cumberland Express Mart, the front counter.

Q: And specifically, who are –who are we looking at here?

A: We're looking at Mr. Cobb and Mr. Miller.

Q: Okay.  Again, let's not identify who we think the individuals are—

A: Okay.

Q: --but in terms of—are we seeing the two suspects here?

A: Yes.

Q: Okay. And what are they doing at this point?

A: They are pointing their guns at our victim.

(*Id.* at 167-68.)

[9] After this exchange, the court held a sidebar conference at the request of Cobb's attorney. The State continued with its examination of Detective Woodland, and during cross-examination, Cobb asked her:

Q: Detective, your—your testimony with regard to the individuals that were in the [E]xpress [M]art, that's—that's your belief as a detective in this case as to who those individuals were, correct?

A: Correct.

Q: And you understand it's the jury's—it's the jury's obligation to decide who that was—who those—

A: Correct.

Q: --individuals were, correct?

A: Yes.

(*Id.* at 171-72.)

[10] The jury returned verdicts of guilty on only two counts connected to the Express Mart robbery: felony murder and Level 2 felony robbery resulting in

serious bodily injury. The court entered a judgment of conviction only of felony murder to avoid a double jeopardy violation and sentenced Cobb to a forty-five-year executed term in the Indiana Department of Correction.

# Discussion and Decision

[11] Indiana Evidence Rule 704(b) provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." This rule exists because "[t]he jury, not the witness, is responsible for deciding the ultimate issues in a trial, and opinion testimony concerning guilt 'invades the province of the jury in determining what weight to place on a witness' testimony.'" *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015) (quoting *Blanchard v. State*, 802 N.E.2d 14, 34 (Ind. Ct. App. 2004)). On appeal, Cobb argues that Detective Woodland's testimony identifying the masked robbers in the Express Mart robbery "was an improper expression of an opinion of guilt and deprived the jury of its right to determine the only disputed fact in the trial." (Appellant's Br. at 12.)

[12] However, we initially address the State's argument that Cobb waived for appellate review his challenge to Detective Woodland's testimony about Cobb's identity because he failed to object at trial. Generally, a party's failure to object to an alleged trial error results in waiver of that claim on appeal. *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019). Further, if improper testimony is admitted at trial, defense counsel may request the trial court admonish the jury

to cure the error, and if not satisfied that an admonishment would cure the defect, counsel may move for a mistrial. *Isom v. State*, 31 N.E.3d 469, 482 (Ind. 2015), *reh'g denied*, *cert denied* 136 S. Ct. 1161 (2016). We presume a prompt admonishment cures any error resulting from the admission of improper evidence and the jurors follow the court's instructions to disregard the evidence. *Mauricio v. State*, 652 N.E.2d 869, 872 (Ind. Ct. App. 1995), *reh'g denied*, *trans. denied*.

[13] After Detective Woodland testified regarding the identity of the masked men in the Express Mart surveillance footage, Cobb requested a sidebar:

> [Cobb's Counsel]: I just wanna [sic] make sure those are not in evidence. She's identifying two individuals that at least (indiscernible)—
>
> THE COURT: Number one, I thought as a detective, she'd know better than that. Number two, I thought she'd be better—thought she'd be better trained. So why don't you—you wanna [sic] say something to make it clear?
>
> [Cobb's Counsel]: I—I think (indiscernible) some sort—
>
> THE COURT: He's—he's been trying to—to reel her back, but—
>
> [Cobb's Counsel]: I—I will say (indiscernible) take a break—
>
> THE COURT: Well, it's you know, ask a question (indiscernible) makes it clear, look, I know you have a—a belief based on your investigation, but this is for the jury's benefit and they need to make a decision without your opinion. And then you guys can

go as wild as you want on cross examination, but that might not
help you.

(Tr. Vol. II at 169.) Although Cobb requested a sidebar, he did not object to
Detective Woodland's testimony. Nor did he request an admonition, move to
strike the testimony, or move for a mistrial. He requested only "a break." (*Id.*)
Cobb's failure to make a contemporaneous objection to Detective Woodland's
testimony identifying him by name in the Express Mart surveillance footage
waived for appeal any argument about the erroneous admission of that
evidence. *See Hardin v. State*, 956 N.E.2d 160, 163-64 (Ind. Ct. App. 2011)
(holding defendant waived argument he was denied a fair trial because of
sleeping juror when the issue was raised during a sidebar but defendant failed to
object).

[14] Cobb argues that even if the issue was waived, the testimony and failure of the
trial court to admonish the jury constitutes fundamental error. "The
fundamental error exception is 'extremely narrow, and applies only when the
error constitutes a blatant violation of basic principles, the harm or potential for
harm is substantial, and the resulting error denies defendant fundamental due
process.'" *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quoting *Mathews v.
State*, 849 N.E.2d 578, 587 (Ind. 2006)), *reh'g denied*. We will reverse for
fundamental error only if the testimony "had such an undeniable and
substantial effect on the jury's decision that a fair trial was impossible." *Baker v.
State*, 111 N.E.3d 1046, 1052 (Ind. Ct. App. 2018), *reh'g denied*, *trans. denied*.

In addition to Detective Woodland's testimony, there was substantial independent evidence of Cobb's guilt. One of the masked men in the surveillance footage had a distinctive patch on the right leg of his pants, and Cobb was wearing pants with the same unique patch when he was detained. Witnesses connected the Dodge Stratus to the Express Mart robbery. Cobb was detained near where the Dodge Stratus was abandoned, and his fingerprints were found on the hood of the car. Miller and Hayes also were detained near where the Dodge Stratus was found, and clothing associated with the robbery and the gun used to shoot Singh were found in the area around the Dodge Stratus. Additionally, Cobb's counsel took steps during cross examination to minimize whatever improper prejudicial impact Detective Woodland's testimony regarding the identity of the masked men might have had on the jury. Cobb elicited testimony that Detective Woodland was testifying only as to her belief regarding who the masked men were. Therefore, we cannot say Detective Woodland's testimony was so prejudicial it made a fair trial impossible. We hold that Detective Woodland's testimony did not constitute fundamental error. *See Nichols v. State*, 55 N.E.3d 854, 862-63 (Ind. Ct. App. 2016) (holding any error in admission of testimony which allegedly improperly vouched for victims was not fundamental error), *trans. denied*.

# Conclusion

[16] Cobb waived for appellate review his challenge to Detective Woodland's testimony by not objecting to the testimony at trial or requesting an

admonition.  Because admission of that testimony did not constitute fundamental error in light of the substantial other evidence of Cobb's guilt, we affirm.

[17]    Affirmed.

Crone, J., and Pyle, J., concur.